# Richmond

Lorenzo Townes v. Commonwealth of Virginia.

April 22, 1974.

Record No. 730603.

Present, All the Justices.

*A. David Hawkins* (*Overbey & Overbey*, on brief), for plaintiff in error.

*Gilbert W. Haith, Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error.

Per Curiam.

Defendant, Lorenzo Townes, was tried by a jury and found guilty of rape (Code § 18.1-44). He was sentenced to a term of 18 years in the State Penitentiary, and we granted him a writ of error.

Defendant has assigned error to the trial court's action, *inter alia,* in overruling (1) his motion to suppress a key found on the ground

at the scene of the crime and (2) his motion to suppress an alleged confession.

On the night of the rape, Officer J. B. Brown of the Altavista police department found a key at the scene of the crime. In the course of investigation, Brown and Sergeant F. H. Tucker went to a basement apartment in the vicinity, occupied by defendant, his two brothers and two females. Brown knocked on the door, which was opened by one of defendant's brothers. Brown asked if he and Tucker could come in and talk with the occupants. The officers were invited inside. At that time, the officers had no reason to suspect that anyone in the apartment had any connection with the crime.

While Brown was talking with defendant and his brothers, Tucker inserted the key in the lock from the outside of the open door and found that it fit. Apparently, none of the occupants of the apartment was aware that Tucker had tested the key.

Tucker, noticing that defendant had become nervous and restless, asked him to step outside and talk. Defendant consented. After a short conversation not related to the crime, defendant agreed to accompany the officers to police headquarters for further conversation. There he was fully advised of his *Miranda* rights before he was questioned about the crime. Defendant denied any knowledge of the crime but admitted losing the key which was shown him.

After about 15 minutes of questioning, defendant's two brothers arrived. They advised defendant to "play it cool," or words to that effect, and told the officers that defendant had an emotional problem. In response, Tucker said to defendant and his brothers that if defendant "had any mental problem or sex problem or something of this nature that well, you know, if he had done this crime, we feel that the courts would try to do something for him. . . ." According to Tucker, no promises were made.

Because the police wanted to test the mud and grass stains on the clothes defendant was wearing, defendant's brothers returned to their apartment and brought him a change of clothes. As defendant was changing clothes in the presence of Brown, defendant spontaneously said, "I did it." Defendant repeated the admission shortly thereafter in Tucker's presence. He then made a further statement admitting the crime, which was reduced to writing and which defendant signed.

At a pre-trial hearing, the trial court found that there had been no illegal search; that the key and evidence surrounding it were admissible; and that the confession had been voluntarily made.

Defendant argues that because the act of trying the key in the lock

of his apartment without a warrant constituted an unreasonable search, the fruits of that search, specifically the key and the confession, should have been suppressed. We do not agree.

Defendant's self-incriminating statements were made before he knew that the police had learned that the key fit the lock. What induced defendant to make those statements was not his knowledge that the police knew that the key fit, but his knowledge that the police had found the key he had lost at the scene of the crime. Hence, the incriminating statements were not the fruits of any search, and since the disputed key was found at the scene of the crime and since defendant admitted that it was his, it was relevant and admissible.

Defendant next contends that the police officers promised him leniency, psychiatric treatment and other help if he confessed, and that these promises rendered the subsequent confession involuntary. There was evidence introduced by defendant concerning the alleged promises.

However, the trial court obviously rejected defendant's evidence. This left only the statement admittedly made by Sergeant Tucker that if defendant had any mental or sexual problems the court would "do something for him" if he was guilty. But that statement was made only after and only because the officers were told by one of defendant's brothers that defendant had a mental or emotional problem. The trial court was entitled to find that the statement was not made to induce and in fact did not induce defendant's confession.

It is the duty of the trial court before admitting a confession into evidence to determine whether it was voluntarily made, and the court's determination of that issue is entitled to the same weight that is accorded a finding of fact by a jury. *Reid* v. *Commonwealth*, 206 Va. 464, 467, 144 S.E.2d 310, 312 (1965). The trial court, in the case at bar, found from conflicting evidence that the confession was voluntarily made and hence was admissible. The evidence supports the court's finding. Defendant was given the requisite *Miranda* warnings. His confession was not coerced, and it was not made as a result of any promises of reward of leniency. He was not subjected to any physical or mental oppression and was not held incommunicado from his family. *See Penn* v. *Commonwealth*, 210 Va. 213, 227-28, 169 S.E.2d 409, 418 (1969), and *McCoy* v. *Commonwealth*, 206 Va. 470, 474, 144 S.E.2d 303, 307 (1965). We hold that the trial court did not err in admitting the confession.

The judgment appealed from will be

*Affirmed.*