## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### ROBERT CHARLES WITT v. COMMONWEALTH OF VIRGINIA.

March 10, 1975.

Record No. 740285.

Present, All the Justices.

*J. Gerard Zoby* (*Decker, Zoby, Collias & Christie,* on brief), for plaintiff in error.

*Alan Katz, Assistant Attorney General* (*Andrew P. Miller, Attorney General; Michael M. Weise, Assistant Attorney General,* on brief), for defendant in error.

Poff, J., delivered the opinion of the court.

The trial court, sitting without a jury, convicted Robert C. Witt under 16 of 19 indictments charging statutory burglary and sentenced him to a total of 20 years in the penitentiary. Following a finding in a habeas corpus hearing below that Witt had been effectively denied his right to appeal, we granted a delayed appeal from the judgment of conviction.

The crucial issue is whether Witt's written confessions were induced by implied coercion.

Before proceeding to a trial on the merits, the trial court conducted a hearing on Witt's motion to suppress the confessions. The evidence upon which the trial court denied the motion was in conflict. However, certain facts are uncontested. "Red" Lane, Lane's wife, and other suspects were arrested before Witt was interrogated. Witt concedes that his *Miranda* rights were timely and properly explained, that he read, signed, and understood the waiver forms, and that he knowingly and intelligently waived his right to counsel. On November 28, 1968, in the presence of Detective Coefield and other officers, Witt wrote and signed confessions concerning eight burglaries. Confessions concerning the other offenses were typewritten by Coefield and signed in his presence by Witt on December 2, 1968.

Witt contends that his confessions were involuntary because they were induced by implied coercion and, under the Fourth and Fifth Amendments, they were incompetent as evidence against him. He says that Coefield implied that if he were "cooperative", his wife, whom Coefield knew was pregnant, would not be arrested.

Concerning what transpired on November 28, 1968, when he was first interrogated, Witt testified:

". . . And the first thing they told me was we were all being arrested. They had arrested about four or five people. And, they told me that they had locked up [Red Lane and his wife] . . . . So, he asked me if I might talk with them. And, I definitely said, 'No', I wouldn't. So, he said, 'Well, I'll tell you what', he said, 'we've got statements against him, we've got everything we need', these were his exact words, 'We've got everything we need to convict you'. And, he says, 'I want you to think about it for a while. Just sit there and think about it. And, we haven't arrested your wife yet, but I have Lane's wife'. And my wife was eight months pregnant . . . . Well, I was worried that they was gonna arrest my wife, like they did Red's wife. So, I wanted to be cooperative, so, I said, 'Well, I guess you got me in a bind'. I said, 'What do you want to know'. So, I come out and I told them about something that he had recalled to me. And, I said, 'Yes, I did it'. And he recalled something else, and he said — he even said that he was gonna refresh my memory. All right. He asked me if I'd write some statements on that. So, I wrote the statements down . . . ."

Concerning the events of December 2, 1968, Witt testified that Coefield read aloud from certain statements given earlier by Cecil Phelps, another suspect; that Coefield used these as patterns for the confessions he typed; and that Coefield asked him to read these confessions. Witt said, "I looked at them and went through them" but "I didn't read them. I already knew what was in them". Coefield testified that Witt read his confessions before he signed them. A comparison of Witt's confessions and Phelps's statements read into evidence showed some similarities and some differences.

Witt's wife testified that Coefield "informed me that he would not arrest me pending my husband's attitude toward helping them out with the other ones."

On appeal, Witt lays much stress upon selected portions of Coefield's testimony. Asked whether he had told Witt that Lane's wife had been arrested, Coefield answered, "I might very well have done this." Later, he said, "I also told him that Red Lane and his wife had been arrested . . . ." Coefield further testified that "I might have told him that he would not — that I would not charge his wife if he cooperated. I don't recall making that statement." Later, he said that he told Witt that "it would be to his best advantage to cooperate."

The trial court considered these random excerpts from Coefield's lengthy testimony in context with other relevant portions. Asked if he made "statements to the effect that if he did cooperate his wife would not be arrested, or that if he didn't cooperate that his wife would be arrested", Coefield answered, "No. No." He explained:

> "I mentioned the fact that there was an investigation, that it was going to be a far sweeping investigation . . . and many people would become involved. And, as to the lesser people involved, his wife, perhaps might be charged. At no time did I state that she will not be charged. I stated she could be charged. And, after we talked to him and advised him of his rights, we told him that as things were progressing, we were learning more details. We learned that his wife was not actively involved in this, and it did not appear she was gonna be charged. But, as I told her, and I told him exactly what I told his wife, that she could possibly be charged, but I didn't think so . . . ."

Concerning his conversation with Mrs. Witt, Coefield testified:

"I told her that this investigation would hinge a great deal as far as she was directly involved, on her husband. . . . And I told her that the investigation if it led us to believe, or to determine for sure, that she was directly involved with any of these burglaries . . . that we were investigating, that she would be charged, and that she could be charged. And, I said, 'Now, it's largely depending on your husband for clarification, and the furthering of the investigation and of any aspects of it.' "

Witt admitted that he had previously been convicted of a felony. Evaluating Witt's testimony quoted above, the trial court also considered what Witt said later:

"I asked him if they arrested my wife. He said, 'No', and I asked him if he was. And, he says, 'Not so far'. And, those aren't his exact words, but I can't recall exact words. . . . And, I believe I did say that if I was cooperative they wouldn't — would they not arrest — they didn't have anything to arrest her for."

Witt also testified that no express threat was made and that "[n]obody promised me anything", but that "[i]t was understood as far as I'm concerned."

As Witt points out, the burden is upon the Commonwealth to prove that a confession is voluntary, *McCoy* v. *Commonwealth*, 206 Va. 470, 144 S.E.2d 303 (1965), and a "confession obtained by such methods as to make it involuntary renders subsequent confessions made while an accused is under the operation of the same influences also involuntary". *Bunting* v. *Commonwealth*, 208 Va. 309, 312, 157 S.E.2d 204, 207 (1967). The minimum measure of the Commonwealth's burden, Witt says, is proof beyond a reasonable doubt. Some jurisdictions have so held. The United States Supreme Court has not.

". . . [I]t is very doubtful that escalating the prosecution's burden of proof in Fourth and Fifth Amendment suppression hearings would be sufficiently productive in . . . [deterring lawless conduct by police and prosecution] to outweigh the public interest in placing probative evidence before juries for

the purpose of arriving at truthful decisions about guilt or innocence.

". . . Thus, the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary. Of course, the States are free, pursuant to their own law, to adopt a higher standard. They may indeed differ as to the appropriate resolution of the values they may find at stake." *Lego* v. *Twomey,* 404 U.S. 477, 489 (1972).

Because an accused is presumed innocent, the prosecution must prove every element of the offense charged beyond a reasonable doubt. Neither a confession nor its voluntariness is an element of the offense charged. *See Lego* v. *Twomey,* 404 U.S. at 487, commenting upon the rule in *In re Winship,* 397 U.S. 358 (1970). A confession is evidence. Under the mandate of the Fifth Amendment, its admissibility depends upon its voluntariness. Voluntariness is a factual question. *Reid* v. *Commonwealth,* 206 Va. 464, 467, 144 S.E.2d 310, 312-13 (1965); *McCoy* v. *Commonwealth, supra,* 206 Va. at 474, 144 S.E.2d at 308. The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence. We hold that the same measure applies to the burden of proving voluntariness of a confession.[1]

"The determination of the admissibility of a confession belongs to the court and not to the jury", and it is for the trial court "to determine from the evidence whether it has been freely and voluntarily made." *Campbell* v. *Commonwealth,* 194 Va. 825, 830, 75 S.E.2d 468, 471 (1953). *See also Townes* v. *Commonwealth,* 214 Va. 683, 685, 204 S.E.2d 269, 271 (1974). In determining whether the Commonwealth has met its burden, the trial court, acting as fact finder, must evaluate the credibility of the witnesses, resolve the conflicts in their testimony, and weigh the evidence as a whole. Its factual finding "is to be given the same weight by the appellate court as is accorded the finding of fact by a jury." *Campbell* v.

---

[1] The admission of a confession under the less stringent preponderance standard does not jeopardize the reliability of jury verdicts or conflict with the constitutional requirement that all elements of a crime be proven beyond a reasonable doubt. *Lego* v. *Twomey,* 404 U.S. at 487. After a trial judge has admitted a confession into evidence, the defendant can still show a jury evidence concerning involuntariness; the jury will then decide the weight to be given the confession.

*Commonwealth, supra.* Factual findings of voluntariness are not disturbed on review unless plainly wrong.[2] 3 C. Torcia, *Wharton's Criminal Evidence* § 672, n. 82 (445) (13th ed. 1973).

Here, the trial court found that the Commonwealth had carried its burden. The suppression hearing was extensive. The trial judge had full opportunity to observe the demeanor of the several witnesses. Counsel were afforded wide latitude in examining them. Unlike the uncontradicted evidence in *Hammer* v. *Commonwealth,* 207 Va. 135, 148 S.E.2d 878 (1966), upon which Witt relies, the evidence below was in substantial conflict.

One may infer, or pretend to infer, what another never intended to imply. Witt says he inferred coercion from Coefield's statements. Coefield says he intended no implication of coercion. Even if Witt in fact drew such an inference, there would be no coercion proscribed by the Fifth Amendment, unless that inference were one a reasonable man would draw. From the conflicting evidence, and evaluating the credibility of the witnesses, the trial court could have concluded that Coefield intended no implication of coercion and that Witt in fact drew no inference of coercion, or that the inference he drew was not a reasonable inference. We cannot say that the trial court's factual determination was plainly wrong, and we find no error in the trial court's ruling on the motion to suppress.

Witt assigns as error the denial of a continuance. Witt did not advise his attorney of the sickness in his family or his desire to call additional witnesses until the day of the trial. We hold that the trial court did not abuse its discretion. *See Ferguson* v. *Pipeline Company,* 206 Va. 719, 146 S.E.2d 173 (1966).

Witt also challenges the sufficiency of the evidence at trial. Upon a careful review of that evidence, including Witt's multiple confessions, we consider it fully sufficient to prove every element of every offense charged beyond a reasonable doubt.

*Affirmed.*

---

[2] Manifestly, a determination of voluntariness based upon a misapplication of constitutional standards is plainly wrong.