COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Humphreys
Argued at Alexandria, Virginia


DENNIS ROGER BOURNE
                                    MEMORANDUM OPINION* BY
v.    Record No. 0309-02-4         JUDGE LARRY G. ELDER
                                        MARCH 4, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                    Ann Hunter Simpson, Judge

          Owaiian M. Jones (Corey L. Poindexter; Law
          Offices of Owaiian M. Jones, on briefs), for
          appellant.

          Eugene Murphy, Assistant Attorney General
          (Jerry W. Kilgore, Attorney General, on
          brief), for appellee.


     Dennis Roger Bourne (appellant) appeals from his jury trial

convictions for driving under the influence, second offense;

causing serious bodily injury while driving under the influence;

and possession of marijuana.  On appeal, he contends the trial

court erroneously (1) concluded his consent to search and

related statements made to a police officer while in the

emergency room were voluntary; (2) allowed the Commonwealth to

cross-examine him on matters outside the scope of direct

examination; and (3) permitted the Commonwealth to impeach him

with a statement the court previously had ordered suppressed.

_____

      * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

The Commonwealth challenges these assignments of error on both procedural and substantive grounds.

We hold these issues lack substantive merit.  The evidence supports the conclusion that appellant's emergency room statements and consent to search were voluntary.  Further, the trial court did not err in allowing the Commonwealth to cross-examine appellant about relevant matters outside the scope of direct examination and to impeach him with a statement it previously had ordered suppressed due to the lack of Miranda warnings.  Thus, we affirm.

I.

BACKGROUND

On July 26, 1998, the twenty-three-year-old appellant and his friend, David Eldert, were involved in a single-car accident.  That accident left Eldert with "permanent" and "significant physical injuries."

When Trooper Connie Saubert arrived at the scene at 2:14 a.m., she found both appellant and Eldert had been ejected from the vehicle and "there was debris, beer cans, all sorts of items throughout the soybean field" where the crash had occurred.

Appellant was transported to the emergency room at Mary Washington Hospital.  Trooper Saubert questioned appellant in the emergency room at 4:28 a.m. as he awaited medical treatment and again at 7:45 a.m. after he had been admitted and moved to a

-

hospital room.  In the emergency room interview, appellant admitted that the pants in the treatment room and the marijuana found inside the pants belonged to him.  In the second interview, appellant admitted he had been driving at the time of the accident.  Appellant was not advised of his <u>Miranda</u> rights before either interview.

Appellant was indicted for the instant offenses.  Prior to trial, appellant moved to suppress both statements.  The trial court denied the motion as to the emergency room interview but granted it as to the subsequent hospital room interview because it found the interview was custodial and appellant had not been Mirandized.

II.

MOTION TO SUPPRESS STATEMENTS AND FRUITS OF SEARCH

A.

PRESERVATION OF VOLUNTARINESS ISSUES FOR APPEAL

Prior to trial, appellant filed written motions to suppress "any and all statements" on the ground that "the statements were involuntary and in violation of his Miranda rights and/or warnings."  He also filed a written motion to exclude the marijuana and related certificate of analysis "due to improper search and seizure."  At the hearing on the motions, he argued that the questioning which occurred in the emergency room was a custodial interrogation and that his resulting statements were involuntary because of his "very serious mental and physical

-

condition."  We hold this argument was broad enough to include the impact of appellant's intoxication on the voluntariness of his statements.  Further, in the context of appellant's written motions, we hold this argument also encompassed a challenge to the portion of his statements in which he consented to the search of his pants and admitted that the fruits of that search belonged to him.  The trial court expressly ruled on both the admissibility of the statements and the admissibility of the marijuana.  Thus, we reach the merits of these assignments of error.

B.

VOLUNTARINESS OF CONSENT TO SEARCH<br>AND ACCOMPANYING STATEMENTS

On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth. Mills v. Commonwealth, 14 Va. App. 459, 468, 418 S.E.2d 718, 723 (1992).  "[T]he trial court, acting as fact finder, must evaluate the credibility of the witnesses . . . and resolve the conflicts in their testimony . . . ."  Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 297 (1975).  "[W]e are bound by the trial court's findings of . . . fact unless 'plainly wrong' or without evidence to support them . . . ."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc).

-

"Whether a statement is voluntary is ultimately a legal rather than a factual question, but subsidiary factual decisions are entitled to a presumption of correctness."  Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992) (citing Miller v. Fenton, 474 U.S. 104, 110, 112, 106 S. Ct. 445, 449, 450, 88 L. Ed. 2d 405 (1985)).  "Voluntariness [of consent to a search] is a question of fact to be determined from all the circumstances . . . ."  Schneckloth v. Bustamonte, 412 U.S. 218, 248-49, 229, 93 S. Ct. 2041, 2059, 36 L. Ed. 2d 854 (1973).

When the Commonwealth seeks to justify a warrantless search on the basis of consent, it bears the burden of proving by a preponderance of the evidence that the consent was voluntary. Camden v. Commonwealth, 17 Va. App. 725, 727, 441 S.E.2d 38, 39 (1994).  The Commonwealth bears the same burden when it seeks to admit a defendant's statements.  Stockton v. Commonwealth, 227 Va. 124, 140, 314 S.E.2d 371, 381 (1984).  In order to determine whether a particular statement or consent to search was "voluntary," the test is whether the statement or consent to search is "the product of an essentially free and unconstrained choice" or whether the individual's "will has been overborne and his capacity for self-determination critically impaired." Schneckloth, 412 U.S. at 225-26, 229, 93 S. Ct. at 2047, 2049; see Lowe v. Commonwealth, 218 Va. 670, 678, 239 S.E.2d 112, 117 (1977); Peterson, 15 Va. App. at 487-88, 424 S.E.2d at 723.

-

When considering the circumstances of a particular case, a court must consider both the details of the police conduct and the characteristics of the accused.  <u>Schneckloth</u>, 412 U.S. at 226, 229, 93 S. Ct. at 2047, 2049.  Relevant characteristics of the accused are his age, education, intelligence, mental and physical condition, and knowledge and notice of his constitutional right to refuse consent.  <u>See</u> <u>id.</u> at 226, 227, 93 S. Ct. at 2047, 2048; <u>Peterson</u>, 15 Va. App. at 488, 424 S.E.2d at 723.  Although "evidence of coercive police activity 'is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment[,]' [t]he amount of coercion necessary to trigger the due process clause may be lower if the defendant's ability to withstand the coercion is reduced by intoxication, drugs, or pain . . . ."  <u>Peterson</u>, 15 Va. App. at 488, 424 S.E.2d at 723 (quoting <u>Colorado v. Connelly</u>, 479 U.S. 157, 164, 107 S. Ct. 515, 520, 93 L. Ed. 2d 473 (1986)).

On appeal, appellant's only challenge to the voluntariness of his consent to search and related statements concerns his "physical and mental condition" at the time he purportedly consented to the search and admitted the marijuana was his. Appellant argues Trooper Saubert's testimony about his condition at that time was inherently incredible because it was at odds with the records of appellant's medical treatment and the

-

testimony of the Commonwealth's forensic expert, Julia Pearson.[1]
We disagree and hold that a preponderance of the evidence,
viewed in the light most favorable to the Commonwealth, supports
the trial court's finding that appellant's consent to the search
and related statements were voluntary.

Trooper Saubert obtained permission from appellant's
treating physician before she spoke with him at 4:28 a.m., and
she testified regarding appellant's appearance and
responsiveness during the conversation that followed.  Pearson,
who had no direct contact with appellant, based her testimony on
the results of blood and urine tests performed on samples drawn
at 3:10 a.m., over an hour and fifteen minutes preceding Trooper
Saubert's encounter with appellant.  Although Pearson gave
testimony regarding the rate at which the body eliminates
alcohol from the blood stream, which could support certain
inferences regarding the level of alcohol appellant may have had
in his blood stream when Trooper Saubert questioned him, this

---

[1] The Commonwealth argues that appellant is not entitled to
present this argument on appeal because Pearson's testimony was
not before the trial court when it ruled on his motion to
suppress and appellant did not renew his motion or argue to the
trial court that Pearson's testimony was relevant to the court's
prior ruling on the suppression motion.  We note the general
principle that, on appeal of the denial of a motion to suppress,
we consider the evidence adduced at the hearing on the motion to
suppress as well as the evidence adduced at trial.  DePriest v.
Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43
(1987).  Further, we assume without deciding that appellant's
motion to suppress sufficiently preserved for appeal appellant's
present challenge to Trooper Saubert's testimony based on
Dr. Pearson's trial testimony.

-

testimony does not compel the conclusion that appellant's consent and statements were involuntary for two reasons.

First, the trial court, as the trier of fact for purposes of the motion to suppress, was not required to accept Pearson's testimony regarding the likely impact of alcohol and other substances detected in appellant's blood and urine on appellant's mental and physical abilities. See Witt, 215 Va. at 674, 212 S.E.2d at 297. Second, Pearson admitted that the rate at which an average person eliminates alcohol from the body may vary and that the hospital's administration of fluids and medications to appellant could cause the alcohol to be eliminated from his system at a faster rate. Although the results of appellant's urine screen showed amphetamines, cocaine and marijuana in his system at 3:10 a.m., Pearson acknowledged that the test results she viewed did not show the amounts of those substances and that any information regarding amounts would have been unhelpful because no correlation exists between the levels of those substances in one's urine and their effect on the brain. She also gave no testimony regarding the rates at which those substances are eliminated from the body.

Thus, the trial court was entitled to accept as credible Trooper Saubert's testimony about appellant's condition when she spoke with him at 4:28 a.m., while appellant awaited a CAT scan, after Saubert first obtained approval from appellant's treating physician. Saubert testified that appellant did not "seem at

-

all dazed [or] confused," "knew who he was," "seemed okay to talk with," "was answering [her] questions," and was not "in any kind of physical pain." Although the medical records indicated appellant was "minimally responsive" when he first arrived in the emergency room at 2:47 a.m., he was re-evaluated "after the CTs and x-rays," at which time he was "much more awake," "alert and oriented." The records thus established that appellant's condition improved while he was in the emergency room and tend to support Trooper Saubert's testimony about appellant's condition at the time of the interview. This evidence supports a finding, by a preponderance, that appellant's consent to the search and related statements were "the product of an essentially free and unconstrained choice" and that his "will [was not] overborne [or] his capacity for self-determination critically impaired." Schneckloth, 412 U.S. at 225-26, 229, 93 S. Ct. at 2047, 2049. Compare Peterson, 15 Va. App. at 488, 428 S.E.2d at 723-24 (in affirming finding that custodial confession was involuntary, noting that questioning took place in ambulance while accused, who had already been arrested, was in pain, had blurred vision and breathing difficulties, and was "unable to understand 'everything that was going on around him'" and that questioning under these circumstances "was coercive police activity rendering his statements involuntary and inadmissible"). The fact that appellant was lying on a

-

backboard and wearing a neck brace as he awaited a CAT scan does not require a different result.

### III.

### SCOPE OF CROSS-EXAMINATION OF APPELLANT

Appellant contends the trial court erred by allowing the Commonwealth to cross-examine him on matters not within the scope of his direct examination.  Under the facts of this case, we hold the trial court's ruling was not error.

Code § 19.2-268 provides that "[i]n any case of felony or misdemeanor, the accused may be sworn and examined in his own behalf, and if so sworn and examined, he shall be deemed to have waived his privilege of not giving evidence against himself, and shall be subject to cross-examination as any other witness . . . ."

> [W]hen the accused voluntarily takes the stand he "loses his character as a party, becomes a mere witness, and may be examined as fully as any other witness. . . .  He may be examined and must answer concerning all matters which are relevant to the case, whether testified to on the direct examination or not."

Smith v. Commonwealth, 182 Va. 585, 598, 30 S.E.2d 26, 31 (1944) (decided under predecessor statute containing identical language to present Code § 19.2-268) (citation omitted); see also Drumgoole v. Commonwealth, 26 Va. App. 783, 786-87, 497 S.E.2d 159, 161 (1998) (holding that defendant who testified on direct examination only about reasons Commonwealth's witness would be

-

motivated to give false testimony about him could be cross-examined about circumstances surrounding malicious wounding and robbery for which he was on trial).

Thus, appellant, by choosing to take the stand, subjected himself to cross-examination about any matter relevant to his prosecutions for driving under the influence and causing serious bodily injury while doing so. Whether he was driving at the time of the accident and with whom he discussed this issue were facts relevant to the merits of appellant's prosecution. Further, the challenged cross-examination regarding whether appellant "told anybody . . . else [he] was driving that night" affected his credibility, as well, because it was closely related to the subject matter of appellant's direct examination, in which he denied telling Eldert's former girlfriend or any member of Eldert's family that he had been driving.

For these reasons, the trial court's refusal to limit the scope of the Commonwealth's cross-examination of appellant in the manner requested was not error.

IV.

USE OF APPELLANT'S SUPPRESSED STATEMENT FOR IMPEACHMENT

Appellant concedes that a statement obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), may be used to impeach a defendant's trial testimony if that testimony is inconsistent with the suppressed statement. See Harris v. New York, 401 U.S. 222, 226, 91 S. Ct.

-

643, 646, 28 L. Ed. 2d 1 (1971). He argues, however, that his trial testimony was not inconsistent with his suppressed statement because he did not deny making the suppressed statement and testified merely that he did not recall making a statement to Officer Saubert. For two reasons, we disagree with appellant's reasoning and hold that the trial court did not err in allowing the challenged impeachment.

First, contrary to appellant's claim that he testified merely that he did not recall talking to Officer Saubert, the record reveals he originally testified, without equivocation, that "[he] never told anybody" that he, rather than Eldert, was driving at the time of the accident. After appellant denied telling "anybody" he was driving at the time of the accident, the Commonwealth sought to prove he admitted his act of driving to Officer Saubert during the suppressed interview which occurred in his hospital room. Thus, the suppressed statement was admissible to impeach appellant's statement that he "never told anybody" he was driving. "[T]he shield provided by Miranda is not to be perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances." Oregon v. Haas, 420 U.S. 714, 722, 95 S. Ct. 1215, 1221, 43 L. Ed. 2d 570 (1975).

Second, even if we view appellant's testimony as a whole and construe it as a lack of recollection rather than an unequivocal denial, the court's decision allowing the

-

Commonwealth to impeach appellant with the previously suppressed statement was not error.  "[T]he statement of a witness that he fails to recollect or does not recall his former . . . statement constitutes an adequate foundation for his impeachment," McGehee v. Perkins, 188 Va. 116, 125, 49 S.E.2d 304, 309 (1948), even where the statement with which the impeachment will be accomplished has been suppressed as a result of a Miranda violation, Harris, 401 U.S. at 223, 91 S. Ct. at 644 (upholding impeachment with prior statement rendered inadmissible under Miranda where accused testified inconsistently with prior statement during direct examination at trial and claimed on cross-examination "that he could not remember virtually any of the questions or answers [from the prior statement when those questions and answers were] recited by the prosecutor"); see Blaylock v. Commonwealth, 26 Va. App. 579, 596-97 & n.10, 496 S.E.2d 97, 105-06 & n.10 (1998) (despite prior ruling suppressing statement to detective, upholding admission of statement for impeachment where accused testified he did not recall talking to detective).

Thus, we hold the trial court did not err in allowing the Commonwealth to use the previously suppressed statement to impeach appellant.

V.

For these reasons, we hold the evidence supports the conclusion that appellant's emergency room statement and consent

-

to search were voluntary.  Further, we hold the trial court did not err in allowing the Commonwealth to cross-examine appellant about relevant matters outside the scope of direct examination or to impeach him with a statement it previously had ordered suppressed due to the lack of <u>Miranda</u> warnings.  Thus, we affirm.

<u>Affirmed.</u>