COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, McClanahan and Senior Judge Fitzpatrick
Argued at Salem, Virginia


DAVID REED JENNINGS

                                               MEMORANDUM OPINION* BY
v.        Record No. 1712-06-3                 JUDGE LARRY G. ELDER
                                               JANUARY 29, 2008
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                            Charles N. Dorsey, Judge

          Matthew J. Pollard (Office of the Public Defender, on brief), for
          appellant.

          Joshua M. Didlake, Assistant Attorney General (Robert F.
          McDonnell, Attorney General, on brief), for appellee.


        David Reed Jennings (appellant) appeals from his convictions, entered on conditional

pleas of guilty, for possession of a firearm by a convicted felon in violation of Code § 18.2-308.2

and possession of a firearm while in possession of cocaine in violation of Code § 18.2-308.4(B).[1]

On appeal, he contends the trial court erroneously denied his motion to suppress, arguing the

police officer who found a firearm and cocaine on his person lacked reasonable suspicion to

conduct the detention and frisk that led to discovery of those items of contraband.  We agree the

frisk was unreasonable under the Fourth Amendment and that the trial court's denial of the

motion to suppress was error.  Thus, we reverse the challenged convictions and strike counts two

and three of the indictment.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Appellant also was convicted for possession of cocaine upon his entry of a guilty plea.
That plea was not conditional, and thus, that conviction is not before us in this appeal.

At a hearing on a defendant's motion to suppress, "the trial court, acting as fact finder, must evaluate the credibility of the witnesses . . . [and] resolve the conflicts in their testimony . . . ." Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 297 (1975). On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth. Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004). "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all . . . evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). However, we review *de novo* the trial court's application of defined legal standards, such as whether the police had reasonable suspicion or probable cause for a search or seizure. Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911, 920 (1996).

An officer may effect a Terry stop if he becomes aware of facts that "lead[] him reasonably to believe in light of his experience that criminal activity may be afoot" and that the person he detains is involved in it. Terry v. Ohio, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889, 911 (1968). "[T]he likelihood of criminal activity [required for a Terry stop] need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 274, 122 S. Ct. 744, 751, 151 L. Ed. 2d 740, 750 (2002). Nevertheless, "the Fourth Amendment requires at least a minimal level of objective justification for making the stop. The officer must be able to

articulate more than an 'inchoate and unparticularized suspicion or "hunch."'" Illinois v.

Wardlow, 528 U.S. 119, 123-24, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570, 576 (2000) (quoting

Terry, 392 U.S. at 27) (citation omitted); see Arvizu, 534 U.S. at 274.  He must articulate "a

particularized and objective basis for suspecting the particular person stopped of criminal

activity."  United States v. Cortez, 449 U.S. 411, 417-18, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621,

629 (1981); see United States v. Sokolow, 490 U.S. 1, 10, 109 S. Ct. 1581, 1587, 104 L. Ed. 2d

1, 12 (1989) ("A court sitting to determine the existence of reasonable suspicion must require the

agent to articulate the factors leading to that conclusion . . . .").

An officer who develops such reasonable, articulable suspicion concerning a person may

stop that person "in order to identify him, to question him briefly, or to detain him briefly, while

attempting to obtain additional information" in order to confirm or dispel his suspicions.  Hayes

v. Florida, 470 U.S. 811, 816, 105 S. Ct. 1643, 1647, 84 L. Ed. 2d 705, 711 (1985).  An officer

may conduct a pat-down search for weapons during a Terry stop if reasonable, articulable

suspicion of criminal activity supports the stop and, additionally, the officer has reasonable,

articulable suspicion that the person is armed and dangerous.  Adams v. Williams, 407 U.S. 143,

146, 92 S. Ct. 1921, 1923, 32 L. Ed. 2d 612, 617 (1972).

Whether an officer has reasonable suspicion for a Terry stop and, additionally, reasonable

suspicion for a weapons frisk is based on an assessment of the totality of the circumstances,

"which includes 'the content of information possessed by police and its degree of reliability,' i.e.,

'quantity and quality.'"  Jackson, 267 Va. at 673, 594 S.E.2d at 599 (quoting Alabama v. White,

496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301, 309 (1990)).  When the factual

basis for probable cause or reasonable suspicion is provided by an informer, the informer's

(1) veracity, (2) reliability, and (3) basis of knowledge are "highly relevant" factors in the overall

totality-of-the-circumstances analysis.  Illinois v. Gates, 462 U.S. 213, 230, 233, 103 S. Ct. 2317,

2328, 2329, 76 L. Ed. 2d 527, 543, 545 (1983). "'[I]f there are strong indicia of the informant's veracity, there need not necessarily be *any* indicia of the informant's basis of knowledge.'" Jackson, 267 Va. at 673, 594 S.E.2d at 599 (quoting State v. Rutzinski, 623 N.W.2d 516, 522 (Wis. 2001)) (emphasis added). The fact that the informer is "a disinterested citizen who is either the victim or eyewitness of a crime . . . permit[s] the infer[ence] that reasonable information obtained from the citizen is reliable." Polston v. Commonwealth, 24 Va. App. 738, 745, 485 S.E.2d 632, 635 (1997), aff'd on other grounds, 255 Va. 500, 498 S.E.2d 924 (1998). In contrast, if the tipster is anonymous or is "a 'criminal' informer," additional information—such as a prior history of giving reliable information, corroboration by another informer, or independent police investigation confirming predictive information in the tip—is necessary. Id.; see Jackson, 267 Va. at 574-77, 594 S.E.2d at 599-601 (discussing anonymous tips); see also White, 496 U.S. at 330, 110 S. Ct. at 2416, 110 L. Ed. 2d at 309 (recognizing that less proof of reliability is required to establish reasonable suspicion than probable cause).

A.

SOURCE OF INFORMATION

Appellant points to Donna McCoy's testimony that she did not describe to the police dispatcher anyone who had been shooting because "it was dark" and she "just heard voices." As a result, appellant contends, the descriptive information available to Officer Puckett about the shooter and his companions must have come from the unknown informant, rendering it insufficient, without proper corroboration, to provide reasonable suspicion for the stop and frisk. We disagree because the evidence in the record, viewed in the light most favorable to the Commonwealth, the party prevailing below, supports a finding that, despite Ms. McCoy's testimony at the suppression hearing, all descriptive information concerning the trio involved in the shooting came from Ms. McCoy.

- 4 -

Officer Puckett's testimony on direct examination did not make clear the source of the information about the shooting that the dispatcher relayed to Officer Puckett. On cross-examination, appellant's counsel referred Officer Puckett to the call screen print-out from his vehicle's laptop computer, and Puckett ultimately confirmed it contained information indicating that both Ms. McCoy and a second, unidentified person called 911 and reported information about the shooting. Officer Puckett first indicated on cross-examination that he was unaware of the source of any of the information. Appellant's counsel then directed Officer Puckett to a particular line on the call sheet, and Puckett confirmed it referenced Ms. McCoy. When Officer Puckett said he "[did not] see any reference to a second caller," appellant's counsel provided him with similar guidance, stating, "It says 'Another caller heard the shots,'" and Puckett responded, "Another caller heard the shots, yes." This exchange, viewed in the light most favorable to the Commonwealth, supports a finding that the only information obtained from the unidentified caller was confirmation that shots had been heard in the area and that all other reported information contained on the call sheet and relayed to Officer Puckett by the dispatcher verbally came from Ms. McCoy, a known citizen informant.

Ms. McCoy's testimony at the suppression hearing, when called as a witness by appellant—that she did not "describe [to the dispatcher] anyone who had been shooting" because "it was dark" and she "just heard voices"—did not compel a different finding. The suppression hearing was held almost five months after the shooting, which permitted the reasonable inference that the contemporaneous notes made by the police dispatcher during Ms. McCoy's call on January 30, 2006, were more accurate than Ms. McCoy's memory at the later suppression hearing. Further, the trial court was free to assess Ms. McCoy's credibility based on her demeanor on the stand and to conclude that she minimized what she saw, perhaps to protect herself from retaliation for providing information leading to appellant's conviction. Thus, the

trial court was entitled to conclude all descriptive information about the shooters came from a known citizen informant and, thus, that the descriptive information was reliable for purposes of determining the existence of reasonable suspicion.

B.

SUFFICIENCY OF INFORMATION TO PROVIDE REASONABLE SUSPICION

Appellant also contends that Officer Puckett lacked reasonable, articulable suspicion to detain appellant and to frisk him for weapons. We hold the evidence, viewed in the light most favorable to the Commonwealth, failed to support the weapons frisk.

The evidence establishes that Puckett equivocated in his testimony on direct examination, stating "I *believe* the three subjects were described as black males" and "I *believe* one of them [was described as having] a dark jacket on." (Emphases added). When asked on direct if "*any*" of the three people he approached at the corner of Harrison and Fifth was wearing a "dark jacket[]," Officer Puckett again equivocated, testifying, "I *believe* [appellant] had on a blue jean jacket, *but I can't be sure*." (Emphases added). When confronted on cross-examination with the call screen print-out and asked if the print-out "describe[d] any individuals," Officer Puckett reported as follows: "It says, 'Can see black male *wearing a camo*, gun shooting in the air.'" (Emphasis added). Officer Puckett gave no testimony on cross-examination or redirect that the call report referred to a dark jacket or a blue jean jacket or that the dispatcher relayed any similar descriptive information to him verbally. Thus, the evidence, viewed in the light most favorable to the Commonwealth, established that the shooter wore some article of camouflage clothing and failed to establish that appellant or any of his companions wore camouflage. The record contained equivocal testimony that appellant may have been wearing a blue jean jacket when Officer Puckett approached him, evidence that failed to link appellant in any way to the report

- 6 -

that the shooter was wearing camouflage. Thus, the record contains no evidence linking appellant to the shooting via a description of his clothing.

The remaining identifying information relevant to the determination of reasonable suspicion was that the shooter or shooters comprised a group of three African-American males standing in the headlights of a blue car that was either a Buick or a Mercury Marquis and that the three left the corner of Rutherford Avenue and Fifth Street, located in a neighborhood known for drug arrests, at about 9:00 p.m. traveling toward the downtown area on foot. When Officer Puckett approached the scene of the shooting four minutes later, he encountered appellant and his two companions one block south of the scene, at a location consistent with the direction the shooters were reported to have walked. Further, the trial court found that one block was a reasonable distance for the trio to have walked in the four minutes that elapsed before Officer Puckett arrived on the scene. Officer Puckett could see up Fifth Street to Rutherford from his location at the intersection of Fifth and Harrison and said no other pedestrians were visible.

Nevertheless, the 911 caller had indicated the trio were all males. Appellant's group, by contrast, comprised two men and one woman, and nothing in the record established the woman's appearance was such that an observer was likely to mistake her for a man. Furthermore, the three were walking in a residential area at 9:00 p.m., during what appellant's attorney described as "prime television hour" rather than "a late time at night." Although Officer Puckett could see no other pedestrians on Fifth Street when he arrived and his view to its intersection with Rutherford was unobstructed, the shooters could easily have entered a residence along Fifth Street or departed in the blue Buick or Mercury Marquis or some other vehicle prior to that time. The presence of appellant and his companions within a block of the shooting four minutes afterward was suspicious but, absent information that appellant or one of his companions was wearing camouflage or that they engaged in furtive behavior or attempted to flee when Officer

- 7 -

Puckett arrived on the scene, the evidence was insufficient to provide Officer Puckett with reasonable, articulable suspicion to detain appellant. Indeed, Officer Puckett articulated only that he "assumed" the trio were the same group that had been shooting, based on the direction of their travel and the fact that no one else was on the street at that time.

Finally, even if Officer Puckett had reasonable suspicion to detain appellant and his companions briefly in an attempt to determine whether one of them might have been the shooter, the existence of reasonable suspicion to detain appellant, without more, did not carry with it the authority to frisk appellant for weapons. See Adams, 407 U.S. at 146, 92 S. Ct. at 1923, 32 L. Ed. 2d at 617.

> [D]espite the danger that inheres in [Terry stops] and the need for police to act quickly for their own safety, the Court in Terry did not adopt a bright-line rule authorizing frisks for weapons in all confrontational encounters. *Even in high crime areas, where the possibility that any given individual is armed is significant*, Terry requires reasonable, *individualized* suspicion before a frisk for weapons can be conducted.

Stanley v. Commonwealth, 16 Va. App. 873, 875-76, 433 S.E.2d 512, 514 (1993) (quoting Maryland v. Buie, 494 U.S. 325, 334 n.2, 110 S. Ct. 1093, 1098 n.2, 108 L. Ed. 2d 276, 286 n.2 (1990)) (emphases added); see also United States v. Caruthers, 458 F.3d 459, 467-68 (6th Cir. 2006) ("We must be particularly careful to ensure that a 'high crime' area factor is not used with respect to entire neighborhoods or communities in which members of minority groups regularly go about their daily business, but is limited to specific, circumscribed locations where particular crimes occur with unusual regularity."). Additional factors relevant to determining whether an officer has reasonable, *individualized* suspicion to conduct a frisk during a Terry stop may include the presence of a suspicious bulge in a detainee's clothing, furtive behavior or an attempt by the detainee to flee. See James v. Commonwealth, 22 Va. App. 740, 745-46, 473 S.E.2d 90, 92 (1996) (upholding frisk of passenger who was in vehicle with person wanted on a felony

warrant and who appeared nervous, failed to comply with officer's request to keep his hands on dashboard, and kept asking to exit the vehicle); Troncoso v. Commonwealth, 12 Va. App. 942, 945, 407 S.E.2d 349, 350-51 (1991) (holding that if bulge observed in stomach area of driver during routine traffic stop is accompanied by fidgeting, nervousness, and effort to conceal bulge, officer's belief that subject may be armed and dangerous is reasonable); see also Whitfield v. Commonwealth, 265 Va. 358, 362, 576 S.E.2d 463, 465 (2003) (holding "'[n]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion'" and that "'[h]eadlong flight[, although] . . . not necessarily indicative of wrongdoing, . . . is certainly suggestive of such'" (quoting Wardlow, 528 U.S. at 124, 120 S. Ct. at 676, 145 L. Ed. 2d at 576)).

Here, nothing Officer Puckett observed when he initiated the stop provided additional facts sufficient to rise to the level of reasonable, individualized suspicion to frisk appellant for weapons. To the contrary, Officer Puckett testified that when he approached the scene with his blue lights flashing, appellant and his companions stopped walking and did not attempt to flee. When Officer Puckett ordered them to remove their hands from their pockets, they immediately complied and did not engage in any furtive behavior. When Officer Puckett inquired whether they had "heard any shots in the area," they accurately responded "yes," and reported that the shots had come from "down the street." Finally, Officer Puckett did not testify that appellant or his companions appeared nervous and did not indicate he observed a suspicious bulge that could have been a weapon. Thus, Officer Puckett gained no additional knowledge during the stop to provide him with reasonable, individualized suspicion to believe that appellant, or either of his companions, was the shooter. See El-Amin v. Commonwealth, 269 Va. 15, 23, 607 S.E.2d 115, 119 (2005) (holding that discovery of weapon on one group member, who demonstrated tendency toward violence, may, along with other circumstances, provide reasonable suspicion for

frisk of other group members).  Absent such evidence, his frisk of appellant violated the Fourth

Amendment.

As we observed in reversing a conviction in <u>Stanley</u>,

> We recognize the legitimate need of police officers to be cautious
> and protect themselves.  If the slightest reasonable circumstances
> exist for an officer to suspect that an individual is armed and
> dangerous, the officer may conduct a limited patdown for
> weapons.  In <u>Terry</u>, an experienced officer reasonably suspected
> the appellant of planning a robbery, a situation which he
> understandably concluded was likely to involve weapons.  In
> [Pennsylvania v.] <u>Mimms</u>, [434 U.S. 106, 111, 98 S. Ct. 330, 333,
> 54 L. Ed. 2d 331, 337 (1977),] the officer observed a bulge which,
> although accompanied by no suspicious behavior, was large
> enough and carried in such a fashion so as to give the officer
> reason to believe it might be a weapon.

16 Va. App. at 877, 433 S.E.2d at 515.  In appellant's case, by contrast, appellant was merely

seen walking in a particular direction in a high crime residential neighborhood with a male and

female companion in the vicinity of a shooting that been committed four minutes earlier by one

of a group of three males of the same race.  Neither appellant's clothing nor the clothing of his

companions matched the description given by the caller.  Further, neither appellant nor his

companions engaged in any suspicious behavior when Officer Puckett approached them, they

admitted having heard gunshots, and Officer Puckett observed no suspicious bulge in the

clothing of appellant or his companions.  As we recognized further in <u>Stanley</u>,

> the Fourth Amendment requires "not that [the factual
> determinations relevant to the reasonable suspicion analysis]
> always be correct, but that they always be reasonable."  <u>Illinois v.
> Rodriguez</u>, 497 U.S. 177, 185, 110 S. Ct. 2793, 2799, 111
> L. Ed. 2d 148 (1990).  [However,] [a]n officer may not, simply by
> observing some item causing a "bulge" in one's clothing, conduct
> a general frisk where the nature of the bulge or the surrounding
> circumstances do not reasonably support the conclusion that
> criminal activity is afoot or that the person is armed and dangerous.
> The physical evidence in this case shows that Officer Wooten's
> conclusion concerning the likely content of appellant's pocket
> prior to the pat down was neither correct nor reasonable.

Id.  Similarly here, the evidence shows Officer Puckett's "assum[ption]" that appellant was part of the group that committed the earlier shooting also "was neither correct nor reasonable."  Id. Compare Caruthers, 458 F.3d at 462, 464-68 (where anonymous "shots fired" call was received from high crime area at *1:30 a.m.*, officers who arrived on scene five minutes later found man matching description of suspect's race and clothing and *man ran* when officers asked to speak with him *and engaged in furtive movements* as if he was trying to get rid of something in his possession, reasonable suspicion supported detention and frisk); United States v. Mitchell, 256 F.3d 734, 738 (7th Cir. 2001) (where officers received "shots fired" call shortly before 10:00 p.m., arrived at scene in high crime area *in 90 seconds*, saw individual matching limited description of shooter as male of particular race walking north on particular street, saw no one else fitting description in that block, *recognized man and his companion as dangerous men with propensity for carrying firearms*, and questioned man and his companion, who *denied having heard shots*, officers had reasonable suspicion to detain and frisk individual); Johnson v. State, 696 So. 2d 1271, 1272-74 (Fla. Dist. Ct. App. 1997) (where officer responding to shots fired call at *1:30 a.m.* arrived on scene three to five minutes later, found only two men in vicinity and engaged them in consensual encounter, during which both *denied having heard any gunshots* and one had *large bulge at his waist that resembled bulge made by officer's own .9 millimeter weapon*, officer had reasonable suspicion to pat down man with bulge).

## II.

For these reasons, we hold the trial court's denial of the motion to suppress was error. Thus, we reverse the challenged convictions and strike counts two and three of the indictment.

Reversed and dismissed.

McClanahan, J., concurring, in part, and dissenting, in part.

I concur in Part I.A. of the majority opinion holding that the source of information about the shooters was reliable for purposes of determining the existence of reasonable suspicion. I dissent from Part I.B. of the majority opinion and the judgment reversing the trial court.

Viewing the evidence in the light most favorable to the Commonwealth, Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004), and giving deference to the trial court's factual findings, McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*), as we must do, I conclude the evidence supports the trial court's decision that reasonable, articulable suspicion existed to stop and detain the appellant. The majority discounts the testimony of the officer and the totality of the circumstances in favor of one clothing detail, "camo," draws inferences and hypotheses in favor of the appellant, and then requires furtive behavior or an attempt to flee for reasonable articulable suspicion. The trial court resolved contrasts in the testimony between Jennings and Officer Puckett, and between the information from the dispatcher and from the call screen, in favor of the officer's testimony. See Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 297 (1975).

While on patrol, Officer Puckett responded to a report of shots fired one block from his location. The information relayed to him by dispatch, based on two callers—one known and one unknown— was that three black individuals were in the street at the corner of Rutherford Avenue and Fifth Street, shots were being fired, the individuals were moving around a vehicle, and were headed toward downtown. Upon Officer Puckett's arrival four minutes later, the only persons in the vicinity were three African-American individuals on the sidewalk one block south of where the call originated. Their location was consistent with having taken a direct path to

downtown from the location of the shootings.[2]  This evidence supports the trial court's finding of a reasonable, articulable suspicion that these were the same individuals involved in the shootings.[3]  Officer Puckett[4] was justified in stopping appellant, "in order to identify him, to question him briefly, or to detain him briefly, while attempting to obtain additional information" so as to confirm or dispel his suspicion.  Hayes v. Florida, 470 U.S. 811, 816 (1985) (citations omitted).

Since the majority concludes the stop was illegal, its alternative analysis regarding justification for the frisk is dicta.  See Lofton Ridge, LLC v. Norfolk S. Ry., 268 Va. 377, 383, 601 S.E.2d 648, 651 (2004) (an "alternative justification for the ruling was unnecessary to the holding" and, as such, "dicta").  Nevertheless, on that issue, I would hold the evidence was sufficient to justify the limited pat down for the officer's safety.  Officer Puckett was conducting an investigation into a shooting that took place four minutes prior to his arrival at the scene.

---

[2] The majority attempts to explain why Officer Puckett saw no other individuals in the area and hypothesizes that the shooters may have entered into a residence or departed in the vehicle.  However, such an analysis of the facts requires us to draw inferences from the facts in appellant's favor rather than in the Commonwealth's favor.  Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988).  Moreover, the possibility of an innocent explanation for what the officer observed does not deprive him of the capacity to entertain a reasonable suspicion of criminal conduct.  See Raab v. Commonwealth, 50 Va. App. 577, 652 S.E.2d 144 (2007) (*en banc*).

[3] The majority notes that the 911 caller indicated the three individuals were all males and appellant's trio consisted of two males and one female.  But, it was dark, and as the trial court noted, when Officer Puckett arrived, he observed three "subjects" who at least on gross inspection met the description he had.  The majority states that nothing in the record established the woman's appearance was such that she could be mistaken for a man, but again we must view the evidence in the light most favorable to the Commonwealth, not the appellant.

[4] Officer Puckett testified that he believed one of the shooters was reportedly wearing a dark jacket and he believed the appellant was wearing a blue jean jacket.  He further testified that the call screen print-out described a black male wearing "camo."  He also testified that information relayed by the dispatcher may not necessarily have made it onto the call screen.  The trial court found Officer Puckett to be a credible witness and resolved any "equivocal" testimony by Officer Puckett in favor of the Commonwealth.  See Witt, 215 Va. at 674, 212 S.E.2d at 297.

Certainly, there then exists "the slightest reasonable circumstances" to suspect that the only three individuals he found in the area were armed and dangerous.  See Stanley v. Commonwealth, 16 Va. App. 873, 877, 433 S.E.2d 512, 515 (1993).

For these reasons, I would affirm the judgment of the trial court.