PRESENT:  All the Justices

COMMONWEALTH OF VIRGINIA
                                          OPINION BY
v. Record No. 070524            JUSTICE G. STEVEN AGEE
                                         June 6, 2008
KENNETH EDWARD JACKSON

           FROM THE CIRCUIT COURT FOR THE CITY OF RICHMOND
                         T. J. Markow, Judge

     The Commonwealth appeals from the judgment of the Circuit

Court for the City of Richmond, which dismissed the

Commonwealth's petition for the civil commitment of Kenneth

Edward Jackson as a sexually violent predator ("SVP").  The

Commonwealth contends that the circuit court erred because the

requirements to establish probable cause under Code § 37.2-906

had been met.  For the reasons set forth below, we will affirm

the judgment of the circuit court.

              I.  RELEVANT FACTS AND PROCEEDINGS BELOW

     The Commonwealth timely filed a petition under Code § 37.2-

905 seeking a determination that Jackson was a SVP under the

Civil Commitment of Sexually Violent Predators Act, Code

§§ 37.2-900 et seq. (the "SVPA").[1]  The circuit court appointed

_____

     [1] Although neither the statute nor its predecessor is titled
as such, we have referred to Code §§ 37.2-900 et seq. and its
predecessor, Code §§ 37.1-70.1 et seq., as Virginia's Sexually
Violent Predators Act ("SVPA").  See Ellison v. Commonwealth,
273 Va. 254, 257 & n.1, 639 S.E.2d 209, 211 & n.1 (2007)
(affirming circuit court's involuntary commitment under the
"Sexually Violent Predators Act (SVPA), Code § 37.1-70.1 et
seq."); and Shivaee v. Commonwealth, 270 Va. 112, 117, 613
S.E.2d 570, 572-73 (2005) (upholding the constitutionality of

counsel for Jackson and conducted a probable cause hearing on December 18, 2006 pursuant to Code § 37.2-906.  At the hearing, the Commonwealth introduced three exhibits: a stipulation that Jackson was serving a criminal sentence for a sexually violent offense, the Virginia Department of Corrections Static-99 risk assessment scoring sheet which rated Jackson's relative risk as "[m]oderate-[h]igh," and the mental health evaluation report prepared by the Commonwealth's expert, Dr. Dennis R. Carpenter.

Dr. Carpenter's report consisted of two parts.  Dr. Carpenter opined in his original report that "Jackson does not meet the criteria as a [s]exually [v]iolent [p]redator."  In a later addendum, Dr. Carpenter reached the opposite conclusion, primarily due to additional information he received from the Commitment Review Committee ("CRC") about a 1997 rape charge against Jackson which had been dismissed.[2]

The Commonwealth also introduced testimony from two witnesses:  Eric Madsen, a senior psychologist with the Department of Corrections and supervisor of the sex offender screening unit, and Dr. Carpenter.  Madsen testified that Jackson was referred to the CRC pursuant to Code § 37.2-903 because Jackson received a score of four on the Static-99 test

---

"Virginia's Sexually Violent Predators Act ('SVPA'), Code §§ 37.1-70.1 through -70.19").

[2] The CRC is the body referenced in Code § 37.2-902 and other parts of the SVPA.

and had been convicted of a sexually violent offense as defined in Code § 37.2-900 because the victim was under the age of 13 and suffered physical bodily injury. This offense, a 1998 conviction for aggravated sexual battery of an eight-year old girl, served as the requisite predicate offense for purposes of meeting the definition of a SVP under Code § 37.2-900.

Dr. Carpenter testified that based on his review of Jackson's criminal and medical records, conversations with his prior probation and parole officers, and his clinical interview with Jackson, Jackson met the statutory requirements to be classified as a SVP. More specifically, Dr. Carpenter testified that based on Jackson's criminal and sexual histories, he diagnosed Jackson with "paraphilia NOS" or paraphilia "[n]ot otherwise specified." According to Dr. Carpenter, an individual suffering from paraphilia NOS has "intense sexuality urges or fantasies or behaviors that involve . . . engaging in sex with a non-consenting person . . . tak[ing] place over a six month period at least or longer."

In addition to paraphilia NOS, Dr. Carpenter testified that he also diagnosed Jackson with "a personality disorder NOS [not otherwise specified] with antisocial features in addition to . . . dependent and avoiding features." This diagnosis describes an individual who is "involved in a pervasive pattern usually of unlawful behavior, that violates the rights of

others."  Dr. Carpenter also identified Jackson's "extensive substance abuse history beginning at an early age" and diagnosed Jackson with "alcohol abuse in remission in a controlled environment," "cocaine dependency in a controlled environment in remission," and "opium [dependency] in remission in a controlled environment."  Taking all of these factors into consideration, Dr. Carpenter characterized the risk that Jackson would commit another sexual offense in the future "from moderate to high." In arriving at his final opinion, Dr. Carpenter testified that when both the adjudicated 1998 aggravated sexual battery conviction was considered with the unadjudicated 1997 rape charge, "[i]t appears that [Jackson] had established a pattern of having inappropriate sexual behavior with minors."

On cross-examination Dr. Carpenter admitted that in his original report to the CRC, he concluded that Jackson was not a SVP.  He explained that when he reviewed Jackson's criminal record to formulate his first diagnosis, that record included the 1997 rape charge but contained no further information about that offense.  Dr. Carpenter testified that in the absence of further information regarding that charge, he could not conclude that Jackson exhibited a pattern of inappropriate sexual behavior consistent with that of a SVP.

To formulate his revised opinion about Jackson's SVP status, Dr. Carpenter stated that he relied upon more specific

4

information about the 1997 rape charge, which the CRC sent to him following his original diagnosis.  According to Dr. Carpenter, the additional information from the CRC indicated that Jackson had been charged with rape for "sexually assaulting a 14-year-old girl in which according to the victim stated that he had fondled her breasts and had stuck his penis in her vagina."  The victim had been examined by a nurse practitioner who concluded, "that the physical trauma was consistent with sexual activity/sexual assault."  Based on this additional information, Dr. Carpenter assumed that the 1997 rape charge was true for the purposes of his evaluation, then filed an addendum to his original evaluation finding that Jackson met the statutory requirements as a SVP.  The circuit court acknowledged Jackson's argument that if Dr. Carpenter was unable to rely on the unadjudicated 1997 rape charge, then Dr. Carpenter would be "back to [his] original provisional diagnosis" that Jackson did not qualify for SVP status.

Dr. Carpenter opined, in the original evaluation, that the risk that Jackson would commit another sexual offense in the future was lowered because of Jackson's age and his health status.[3]  After receiving the supplemental information from the CRC, Dr. Carpenter reassessed these factors and opined that in

---

[3] Jackson was diagnosed with Grave's Disease and Chronic Renal Failure and has been on dialysis since 1995.

finding Jackson was a SVP, "it is evident that his present medical conditions were not debilitating enough to prevent him from committing his sexual offenses."

Dr. Carpenter also testified that he had performed approximately 40 mental health evaluations under the SVPA. On cross-examination, Dr. Carpenter testified that of the 40 individuals examined, he found only three to be non-SVPs upon his initial evaluation. In two of those three cases, including Jackson's, the Commonwealth or CRC forwarded additional information to Dr. Carpenter, and he subsequently changed his diagnosis to find SVP status.

At the conclusion of the probable cause hearing, the circuit court held that "I don't believe that probable cause is found here. I'm going to dismiss the case at this stage." The circuit court confirmed its bench ruling in an order entered December 19, 2006, which stated "the court determines that probable cause does not exist to believe that Kenneth E. Jackson is a sexually violent predator." We granted the Commonwealth this appeal.

## II. ANALYSIS

### A. Standard of Review

Code § 37.2-906 requires a circuit court to "determine whether probable cause exists to believe that the [defendant] is a sexually violent predator." The meaning of "probable cause"

6

and the standards of a probable cause hearing under the SVPA have not been previously addressed by this Court. The General Assembly has also not defined "probable cause" for purposes of the SVPA. See Code § 37.2-900 (setting forth definitions under the SVPA). Although SVP adjudication under Code § 37.2-906(C) is a civil and not a criminal proceeding, Code § 37.2-908(H), see Ellison v. Commonwealth, 273 Va. 254, 256, 639 S.E.2d 209, 211 (2007) (a proceeding under Code § 37.2-900 et seq., is a "civil proceeding"), we believe it reasonable to look to the standards applicable to probable cause determinations in a criminal proceeding for guidance.

Probable cause is assessed in preliminary hearings in Virginia criminal cases "essentially [as] a screening process." Moore v. Commonwealth, 218 Va. 388, 391, 237 S.E.2d 187, 190 (1977). "Its primary purpose is to determine whether there is 'sufficient cause' for charging the accused with the crime alleged." Id. Like a criminal probable cause hearing, the SVP probable cause hearing is concerned with the liberty interest of the defendant and whether sufficient grounds exist to warrant further proceedings against him. We conclude that the SVP probable cause hearing serves a similar purpose as the criminal probable cause hearing, that of ensuring that there is "sufficient cause" to believe the individual is a SVP.

Probable cause in the criminal context is found when "there is reasonable ground to believe that the crime has been committed and . . . the accused is the person who committed it." Moore, 218 Va. at 391, 237 S.E.2d at 190. Similarly, under the SVPA, the circuit court must determine whether probable cause exists to believe that the defendant is a SVP. Code § 37.2-906(C).

With such strong similarities between probable cause in the criminal and SVP contexts, we shall apply the standard of review in a SVPA proceeding that we use in criminal cases:

> On appellate review, we give deference to the historical facts determined by the trial court, but we review de novo whether the legal standard of probable cause was correctly applied to the historical facts. Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004); see Ornelas v. United States, 517 U.S. 690, 699 (1996).

Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005). "[W]e will not disturb the factual findings of the trial court unless plainly wrong or unsupported by the evidence. The issue of whether . . . probable cause [existed,] however, is a mixed question of fact and law that we review de novo." Robinson v. Commonwealth, 273 Va. 26, 39, 639 S.E.2d 217, 224-25 (2007) (citations omitted). Thus, the circuit court's SVP probable cause determination is a mixed question of fact and law.

B. The Merits

The Commonwealth does not contest that it has the burden of proof at the SVP probable cause hearing.  The SVPA places the burden on the Commonwealth in a Code § 37.2-906 proceeding to introduce evidence sufficient to permit the circuit court to verify the identity of the defendant and to support a finding that there are reasonable grounds to believe (1) the defendant has been convicted of a sexually violent offense, and (2) because of a mental abnormality or personality disorder, the defendant "finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts." Code § 37.2-900.

The Commonwealth contends that it conclusively satisfies the burden of proof to establish probable cause under Code § 37.2-906(C) "when the Commonwealth produces a prima facie case addressing the essential elements of an SVP. . . .  Unless the Commonwealth's evidence is proven manifestly wrong or so inherently incredible that a reasonable person could not believe it, the trial court cannot dismiss the petition at the probable cause hearing."  To establish a prima facie case, the Commonwealth contends it "must present some evidence, more than a scintilla, on each of the elements of an SVP."  In the Commonwealth's view, if its evidence "satisfies all of the elements of proof necessary" and if the evidence is not "'so

9

incredible, insubstantial, or otherwise of such a quality that no reasonable person could rely on it to conclude that the Commonwealth had met its burden of proof,' then the judge must determine that probable cause has been met."  We disagree with the Commonwealth.

In a criminal case, there is no precedential basis upon which to claim that a court must find probable cause, as a matter of law, simply because the Commonwealth produces more than a scintilla of evidence that a crime has been committed and that the defendant committed that crime.  Inherent in the court's function at a preliminary hearing is the exercise of the court's discretion in weighing the evidence to determine whether probable cause has been shown.  See Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 297 (1975) ("the trial court, acting as fact finder, must evaluate the credibility of the witnesses, resolve the conflicts in their testimony, and weigh the evidence as a whole").  At a preliminary hearing on a criminal charge, the court acts as the trier of fact, considers the witnesses' testimony, observes the reaction of the witnesses during cross-examination, and evaluates the credibility of the witnesses.  We see no basis upon which to view a SVP probable cause hearing differently.

Under the Commonwealth's view, the circuit court at a SVP probable cause hearing would be an administrative functionary.

Unless the evidence was "manifestly wrong or so inherently incredible that a reasonable person could not believe it," probable cause would be required to be found as a matter of law. We do not find in the plain language of the SVPA that the General Assembly intended such a constricted view of a Code § 37.2-906 probable cause hearing.  Indeed, the Commonwealth's proposed construct of a probable cause proceeding appears partially inconsistent with the SVPA, which explicitly states that an expert opinion introduced at a probable cause hearing "shall not be dispositive of whether the respondent is a sexually violent predator."  Code § 37.2-906(C).

It is a common canon of statutory construction that when the legislature uses the same term in separate statutes, that term has the same meaning in each unless the General Assembly indicates to the contrary.  See Virginia Elec. & Power Co. v. Board of Supervisors, 226 Va. 382, 387-88 309 S.E.2d 308, 311 (1983) (courts "interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal"); Prillaman v. Commonwealth, 199 Va. 401, 405, 100 S.E.2d 4, 7 (1957) ("statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great connected, homogeneous system, or a single and complete statutory arrangement") (citation omitted).  There is nothing in the SVPA to indicate that the General Assembly intended any

11

different construction of probable cause in Code § 37.2-906 than, for example, Code § 16.1-127 or Code § 19.2-218.  See Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (courts "assume that the legislature chose, with care, the words it used when it enacted the relevant statute"). In these other probable cause determinations, the court is not a mere gatekeeper, but is the sole judge of the credibility of the witnesses.

The Commonwealth relies heavily on cases from other jurisdictions with SVP statutes as support for its proposed "more than a scintilla" and "prima facie" probable cause standard.  See Commonwealth v. Reese, 781 N.E.2d 1225, 1230 (Mass. 2003) (evidence presented must be of "suitable quality to allow the action to proceed further").[4]  In particular, the Commonwealth cites Massachusetts case law as precedent for its argument in the case at bar.  However, the probable cause proceeding under Massachusetts law has fundamental differences from a SVPA proceeding in Virginia.

Like Virginia, a SVP proceeding in Massachusetts is begun by petition and a judge is required to hold a hearing to

---

[4] See, e.g., State v. Robbins, 785 So.2d 620, 622 (Fla. Dist. Ct. App. 2001)(evidence must "cause a person of ordinary prudence to believe that the respondent is a sexually violent predator"); State v. Watson, 595 N.W.2d 403, 420 (Wis. 1999) (evidence "must establish a plausible account on each of the required elements").

12

"determine whether probable cause exists to believe that the person named in the petition is a sexually dangerous person." Mass. Gen. Laws ch. 123A, § 12(c). If probable cause is found, the defendant is committed to a treatment center where "two qualified examiners" conduct an evaluation and report to the court. Mass. Gen. Laws ch. 123A, § 13(a). After these reports are filed, a second petition is required to put the question of whether the person is "sexually dangerous" before the court. Mass. Gen. Laws ch. 123A, § 14(a).

By contrast, a Code § 37.2-904 assessment in Virginia includes a mental health examination, as by Dr. Carpenter, before the probable cause hearing is conducted. Further, there is only one petition filed under the SVPA, not two as in Massachusetts. Thus, the probable cause hearing in a Massachusetts SVP proceeding takes place under a significantly different procedural setting from that in Virginia, and under a regime in which a less exacting evidentiary basis appears established for the hearing. That Massachusetts apparently uses a more relaxed probable cause standard than we believe applies in Virginia may be partly attributable to these differences in the statutory framework between the two states.

None of the cases cited by the Commonwealth actually uses the standard the Commonwealth promotes. In any event, we would find such a case inapposite for construing probable cause under

Code § 37.2-906 without specific direction from the General Assembly invoking a standard other than the one traditionally applied in Virginia. Thus, even if we assumed that the Commonwealth produced more than a scintilla of evidence to prove the statutory elements that Jackson was a SVP, that showing would not, in and of itself, establish probable cause. Having rejected the Commonwealth's proposed standard, we turn to the record in this case to determine whether the disposition of this proceeding below withstands scrutiny under the standard of review we noted earlier, which directs that the circuit court's judgment be affirmed unless it was plainly wrong or without evidence to support it.

The Commonwealth advanced the position that Dr. Carpenter's expert opinion – that Jackson was a SVP – was not contradicted by any evidence from Jackson, and therefore, the circuit court was required to accept that uncontradicted evidence to reach a finding of probable cause. In the Commonwealth's view, since Jackson did not rebut Dr. Carpenter's opinion with direct evidence of his own, there was uncontradicted evidence that Jackson was a SVP and the circuit court was thus bound to find probable cause as a matter of law. Again, we disagree with the Commonwealth's reasoning.

"A litigant is bound by the uncontradicted evidence of his opponent when not inherently improbable and counter to no

14

reasonable inference." Hailey v. Johnson, 201 Va. 775, 778, 113 S.E.2d 664, 666 (1960) (citing Virginia Electric & Power Co. v. Lenz, 158 Va. 732, 737, 164 S.E. 572, 573 (1932)). However, the trier of fact may disregard testimony of a witness impeached on cross-examination. See, e.g., Cheatham v. Gregory, 227 Va. 1, 4, 313 S.E.2d 368, 370 (1984) ("A trier of fact must determine the weight of the testimony and the credibility of witnesses, but may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record, even though such witnesses are interested in the outcome of the case." (emphasis added)); see also Blount v. Commonwealth, 213 Va. 807, 809, 195 S.E.2d 693, 695 (1973) ("[U]ncontradicted testimony may be disregarded if the jury believes that it is untrue. In determining whether it is untrue the jury may rely on such factors as the manner of the witness, as the jury here was advised in the usual credibility instruction, and the inherent improbability of his statements.").

Dr. Carpenter's testimony as to Jackson's SVP status was not uncontradicted. He was subject to rigorous cross-examination which pointed out, among other things, that Dr. Carpenter had given two SVP opinions: one that Jackson was a SVP and another that he was not. Dr. Carpenter admitted on cross-examination that the reason he changed his original opinion,

15

that Jackson was not a SVP, was solely based on his receipt of a report of unadjudicated conduct concerning a 1997 rape charge.

While Code § 37.2-906(C) permits the consideration at a SVP probable cause hearing of "prior convictions or charges," there is no statutory mandate that an unadjudicated charge must be taken as true for purposes of the hearing. Jackson's counsel effectively impeached Dr. Carpenter's reliance on the 1997 charge based on the surrounding facts. For example, Dr. Carpenter conceded, when considering the alleged 1997 assault by Jackson, that "I'm not a physician so I can't be in a position to say whether or not that's refutable information."

Dr. Carpenter admitted that his change of opinion on Jackson's SVP status was predicated on the veracity of the 1997 rape charge because that "established a pattern of having inappropriate sexual behavior with minors." Without that basis, the circuit court recognized that Dr. Carpenter's original SVP assessment would otherwise stand.

In SVP probable cause hearings, the defendant has limited resources, other than appointed counsel, to contest the Commonwealth's case. For example, the right to the assistance of experts under Code § 37.2-907 has not yet matured at the time of the probable cause hearing. Nonetheless, the defendant is not required to rebut the Commonwealth's evidence with direct evidence of his own in order to contradict the Commonwealth's

16

case. As in the case at bar, the impeachment of the Commonwealth's expert witness, Dr. Carpenter, by effective cross-examination, removes Dr. Carpenter's opinion that Jackson was a SVP from the realm of uncontradicted evidence.

This Court will not substitute its judgment on the credibility of a witness for that of the circuit court. "[T]he credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses." Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736–37 (1985); see also Coppola v. Commonwealth, 220 Va. 243, 252, 257 S.E.2d 797, 803 (1979).

Accordingly, the circuit court was entitled to weigh Dr. Carpenter's conflicting opinions on Jackson's SVP status in determining whether the Commonwealth had established probable cause. There was evidence in the record, established by cross-examination, that impeached Dr. Carpenter's SVP diagnosis. As such, we cannot say the circuit court's decision that probable cause had not been shown was plainly wrong or without evidence to support it.

### III.  CONCLUSION

For the foregoing reasons, we will affirm the judgment of the circuit court.

17

JUSTICE KINSER, with whom JUSTICE LEMONS joins, concurring in part and dissenting in part.

Today, the majority decides an issue of first impression without acknowledging that it is doing so, without any explanation for its decision, and without citation to any relevant authority. In concluding that a probable cause hearing under the Sexually Violent Predators Act (SPVA), Code §§ 37.2-900 et seq., should follow the standards applicable to probable cause determinations in criminal proceedings, the majority holds that "[a]t a preliminary hearing on a criminal charge, the court acts as the trier of fact, considers the witnesses' testimony, observes the reaction of the witnesses during cross-examination, and evaluates the credibility of the witnesses." This is the role that a court performs as a trier of fact in a criminal bench trial. See Lane v. Commonwealth, 184 Va. 603, 611, 35 S.E.2d 749, 752 (1945) (As the trier of fact, findings of the court regarding the credibility of the witnesses and the weight of the evidence "stands on the same footing as the verdict of a jury."). This Court, however, has never previously decided whether a court at a preliminary hearing on a criminal charge functions in the same capacity as it does when acting as the trier of fact in a bench trial in terms of resolving conflicts in the evidence and judging the credibility of witnesses.

18

We know that a "preliminary hearing is essentially a screening process [to determine] whether there is reasonable ground to believe that the crime has been committed and whether the accused is the person who committed it."  Moore v. Commonwealth, 218 Va. 388, 391, 237 S.E.2d 187, 190 (1977); see also Foster v. Commonwealth, 209 Va. 297, 300, 163 S.E.2d 565, 567 (1968) (the only issue to decide at a preliminary hearing is whether there is reasonable ground to believe that a crime has been committed and that the accused was the person who committed the crime).  And, this Court has defined the term "probable cause" as "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the [accused] is guilty of the crime of which he is suspected."  Gresham v. American Ry. Express Co., 147 Va. 395, 399, 137 S.E. 471, 472 (1927); see also, Wheeler v. Nesbitt, 65 U.S. 544, 551-52 (1861) (probable cause is "the existence of facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted"); Scott v. Shelor, 69 Va. (28 Gratt.) 891, 905 (1877) (defining probable cause as "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offence with

which he is charged"). " 'Probable cause, as the very name implies, deals with probabilities.' " Derr v. Commonwealth, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991) (quoting Saunders v. Commonwealth, 218 Va. 294, 300, 237 S.E.2d 150, 155 (1977)). We also know that, pursuant to Code § 19.2-183(B), "the rules of evidence applicable to criminal trials in this Commonwealth" govern the introduction of evidence at a preliminary hearing, and the accused has the right to "cross-examine witnesses, introduce witnesses in his own behalf, and testify in his own behalf." Furthermore, if there is "not sufficient cause for charging [the accused] with the offense," the court "shall discharge the accused." Code § 19.2-186.

But, we did not know until today that a court at a preliminary hearing on a criminal charge acts as a trier of fact and that this role is "the one traditionally applied in Virginia" at preliminary hearings. The majority offers no explanation for this conclusion, and I find no support for it in our jurisprudence. Indeed, the authority cited by the majority, Witt v. Commonwealth, 215 Va. 670, 212 S.E.2d 293 (1975), pertains to a trial court's role as the trier of fact in determining whether the Commonwealth has carried its burden to show that a confession was freely and voluntarily made. Id. at 674, 212 S.E.2d at 297.

20

I agree that the probable cause hearing mandated by the provisions of Code § 37.2-906 is analogous to a preliminary hearing in the criminal context and that the determination whether there is probable cause to believe that an individual is a sexually violent predator, as that term is defined in Code § 37.2-900, should be guided by the same standards used to determine probable cause at a preliminary hearing on a criminal charge. In my view, however, the function of the court at a preliminary hearing in the criminal context is more circumscribed than its role as the trier of fact in a bench trial. As the court explained in State v. Dunn, 359 N.W.2d 151 (Wis. 1984):

> A preliminary hearing as to probable cause is not a preliminary trial or a full evidentiary trial on the issue of guilt beyond a reasonable doubt. It is intended to be a summary proceeding to determine essential or basic facts as to probability.
>
> . . . .
>
> [A]lthough the judge at a preliminary examination must ascertain the plausibility of a witness's story and whether, if believed, it would support a bindover, the court cannot delve into the credibility of a witness. The issue as to credence or credibility is a matter that is properly left for the trier of fact.
>
> . . . .
>
> We stress that a preliminary hearing is not a proper forum to choose between conflicting facts or inferences, or to weigh the state's evidence against evidence favorable to the defendant. That is the role of the trier of fact at trial.

21

<u>Id.</u> at 154-55 (internal citations omitted).

Courts in numerous other jurisdictions have similarly defined the role of a court in a preliminary hearing to determine probable cause on a criminal charge. <u>See</u>, <u>e.g.</u>, <u>People v. Fry</u>, 92 P.3d 970, 977 (Colo. 2004) (At a preliminary hearing to determine probable cause, "[a] judge may not engage in credibility determinations unless the testimony is incredible as a matter of law," meaning testimony that is " 'in conflict with nature or fully established or conceded facts.' " (quoting <u>People v. Ramirez</u>, 30 P.3d 807, 809 (Colo. 2001))); <u>Smith v. O'Brien</u>, 251 A.2d 323, 324 (N.H. 1969) (Since the purpose of a preliminary hearing is to determine whether probable cause exists to believe that a crime has been committed and that the defendant committed it, "[t]he hearing is not a judicial trial of the issue of guilt or innocence, . . . [h]ence [the] court is not called upon to reconcile any conflicting testimony, or judge the credibility of witnesses."); <u>In re A.J.S.</u>, 877 N.E.2d 997, 1001 (Ohio Ct. App. 2007) (A juvenile court at a preliminary hearing to determine if sufficient credible evidence exists to transfer jurisdiction to an adult court "does not find facts, choosing one party's evidence over the other when the credible evidence is contradictory as to a fact or element of an offense." Instead, the juvenile court "evaluates the quality of the evidence and then decides whether the credible evidence

22

adduced justifies a belief that the juvenile committed a particular offense."); Liciaga v. Court of Common Pleas, 566 A.2d 246, 248 (Pa. 1989) ("The committing magistrate is precluded from considering the credibility of a witness who is called upon to testify during the preliminary hearing."); State v. Talbot, 972 P.2d 435, 438 (Utah 1998) (While "a magistrate may review the credibility of evidence presented at a preliminary hearing, . . . the magistrate's evaluation of credibility . . . is limited to determining that 'evidence is wholly lacking and incapable of reasonable inference to prove some issue which supports the [prosecution's] claim.' . . . [A] magistrate at a preliminary hearing is precluded from evaluating the weight of otherwise credible evidence." (third alteration in original) (quoting State v. Pledger, 896 P.2d 1226, 1229 (Utah 1995))); see also In re Care & Treatment of Martineau, 242 S.W.3d 456, 460 (Mo. Ct. App. 2007) (in the context of a sexually violent predator proceeding, "the trial court does not weigh evidence or make credibility determinations at preliminary hearings" to determine probable cause).[*]

---

[*] I recognize that some courts advocate a more expansive role for a court at a preliminary hearing. See, e.g., Jones v. Superior Court, 483 P.2d 1241, 1245 (Cal. 1971) (In a preliminary examination, "it is clear that it is the responsibility of the committing magistrate to weigh the evidence, resolve conflicts and give or withhold credence to particular witnesses.").

Thus, contrary to the majority, I conclude that it is not part of a court's inherent function at a preliminary hearing in the criminal context to act as a trier of fact by weighing the evidence and making credibility findings. Nor is it a function of the court in a SVPA proceeding when determining probable cause under Code § 37.2-906. Instead, in both instances, the court, in my view, should determine whether the evidence, if believed, supports a finding of probable cause. Dunn, 359 N.W.2d at 155. Only in those rare instances when evidence is "incredible as a matter of law," Fry, 92 P.3d at 977, or "is wholly lacking and incapable of reasonable inference to prove some issue," Talbot, 972 P.2d at 438, should the court make credibility determinations or weigh the evidence.

This limited role of a court when determining probable cause, whether in the criminal context or in a SVPA proceeding, is in accord with the function of a preliminary hearing as a "screening process," Moore, 218 Va. at 391, 237 S.E.2d at 190, to "ferret[] out . . . groundless and improvident prosecutions." Talbot, 972 P.2d at 438. It is also consistent with the provisions of Code § 19.2-186. That statute, as previously pointed out, directs the court to discharge an accused if there is "not sufficient cause for charging [the accused] with the offense." Id. But, if the court "considers that there is sufficient cause only to charge the accused with an offense

24

which [the court] has jurisdiction to try, then [the court] shall try the accused for such offense and convict him if [the court] deems him guilty." Id. (emphasis added). This statutory distinction signifies that, when trying an accused, a court functions as a trier of fact but that it does not do so when deciding only whether there is "sufficient cause" to charge the accused with the offense.

The majority's decision that a court at a preliminary hearing on a criminal charge acts as a trier of fact by weighing the evidence and making credibility determinations has the potential of turning preliminary hearings into "mini-trials." It also will likely permit defendants to use preliminary hearings as discovery tools, a practice that is not in accord with the purpose of a preliminary hearing. See Foster, 209 Va. at 300-01, 163 S.E.2d at 568 (holding that "[a] preliminary hearing may not be used for the purpose of discovery" and that the court at a preliminary hearing did not err by refusing to allow the defendant to present testimony about an incriminating statement and confession because such testimony was not relevant to the issue whether there was reasonable ground to believe the defendant committed the charged offense); Williams v. Commonwealth, 208 Va. 724, 729, 160 S.E.2d 781, 784 (1968) (same).

Turning now to the case before us, I thus conclude that the circuit court was not entitled to weigh what the majority characterizes as "Dr. Carpenter's conflicting opinions on Jackson's [sexually violent predator] status." In my opinion, Dr. Carpenter's testimony that Jackson met the statutory requirements to be classified as a sexually violent predator was not incredible as a matter of law. Thus, his testimony, along with the other evidence presented by the Commonwealth, established probable cause to believe that Jackson is a sexually violent predator. See Code § 37.2-906(C). The circuit court's finding to the contrary was plainly wrong. The court erred in assuming the role of a trier of fact at the probable cause hearing.

For these reasons, I respectfully concur in part and dissent in part. I would reverse the judgment of the circuit court and remand this case for further proceedings under the SVPA.