COURT OF APPEALS OF VIRGINIA


Present:   Judges Beales, Powell and Alston
Argued at Richmond, Virginia


EMONNIE O. CRICHLOW
                                                MEMORANDUM OPINION[*] BY
v.        Record No. 2631-08-2                  JUDGE CLEO E. POWELL
                                                DECEMBER 15, 2009
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF CAROLINE COUNTY
                      Horace A. Revercomb, III, Judge

        John G. LaFratta (Main Street Law Office, on briefs), for
        appellant.

        Joshua M. Didlake, Assistant Attorney General (William C. Mims,
        Attorney General, on brief), for appellee.


        Emonnie O. Crichlow ("Crichlow") appeals his convictions for two counts of robbery, in

violation of Code § 18.2-58; one count of wearing a mask, in violation of Code § 18.2-422; and

one count of use of a firearm in the commission of a felony, in violation of Code § 18.2-53.1.

Crichlow contends that the evidence was only sufficient to prove one count of robbery because,

although there were two individuals present during the robbery, only one of the individuals was

required to do anything in the furtherance of the robbery.  Crichlow further contends that, in light

of the alibi evidence he presented at trial, no reasonable trier of fact could have concluded that he

was the person who robbed the motel that night.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

In the early morning hours of May 19, 2007, Shameka Ellis ("Ellis") and Danielle Cook ("Cook") were working the front desk of the Quality Inn in Carmel Church. Ellis was a clerk-in-training, and Cook was supervising her.

At around 2:15 a.m., Ellis was behind the front desk, near the cash register, while Cook was in front of the front desk. Cook was preparing to leave for the night when she saw Crichlow approach the front desk wearing a black hoodie, gloves, and a bandana over his face. Cook testified that she knew Crichlow quite well and recognized him based on his height, build, and distinctive eyes which were not covered by the bandana.

When Crichlow walked through the door to the office, Cook and Ellis noticed that he was carrying a black and silver gun in his hand. Crichlow pointed the gun at Cook and told her "Stay right -- don't move. Stay right there." He then moved toward Ellis and ordered her to open the cash drawer. Ellis complied, and Crichlow ordered her to back away. Crichlow leaned over the counter and took approximately $400 out of the cash drawer, including a white envelope marked "50¢ Pennies," and fled down an interior hallway.

Within a few minutes of the robbery, Deputy Sheriff Christopher Hall ("Deputy Hall") arrived on the scene. After speaking with both Cook and Ellis, Deputy Hall went down the hallway where Crichlow had fled. At the end of the hallway, Deputy Hall noticed that one of the exits was propped open with a small rock. The exit led to the main courtyard of the hotel. While in the courtyard, Deputy Hall found another door that was propped open leading to a stairway. At the same time, Deputy Sheriff Wendy Jones ("Deputy Jones") observed several individuals wearing clothing similar to the robber in the room immediately above the second door.

Deputies Hall and Jones went up to the second floor and found that the room overlooking the second door was Room 285. Deputy Hall knocked on the door and asked everyone to come

out of the room. Four people exited immediately, but several people remained inside. Deputy Hall gained permission to search the room, and, upon entering, found that there were three more people in the room, including Crichlow. At the time, Crichlow was in one of the beds. Deputy Hall asked Crichlow and the other individuals to exit the room so that he could conduct a search In response, Crichlow asked if he could put on a pair of pants. Sergeant Chad Rozell ("Sergeant Rozell") asked if they could check the pants for weapons first. While checking for weapons, Sergeant Rozell found a pair of dark colored gloves in the front pockets of the pants.

After Crichlow put on his pants, the deputies searched the bed he had been lying in. The deputies discovered $328 in cash inside the pillowcase, a black, white, and red bandana between the mattress and the box spring, a fully-loaded silver pistol underneath the box spring, and a white envelope marked "50¢ Pennies" between the bed and the wall.

A forensic examination revealed a set of fingerprints on the magazine of the pistol. The fingerprints matched those belonging to Jajuan Lewis ("Lewis"). At trial, Lewis testified that Crichlow had let him handle the pistol earlier in the day. Lewis further testified that he had been in the hotel room when Crichlow arrived. Lewis testified that when Crichlow came into the hotel room, he (Crichlow) said "Say I've been here all night."

After the Commonwealth had put on all of its evidence, Crichlow called a number of witnesses to establish an alibi. Tyrone Jackson testified that Crichlow had injured his ankle earlier in the day and as a result, Crichlow was walking with a limp. Brittnay Florenar testified that Crichlow arrived at Room 285 at around 10:00 p.m. and promptly went to sleep. Similarly, Antwon Johnson testified that Crichlow was asleep during the time the crime was committed.

Crichlow testified that he arrived at the hotel between 8:50 p.m. and 10:00 p.m. He claimed that he immediately went to Room 285, undressed, and went to sleep. He further

testified that he placed the money he brought with him into the pillowcase out of habit. He stated that he did not know who robbed the hotel because he was asleep the entire time.

The trial court found Crichlow guilty of two counts of robbery, one count of wearing a mask while committing a robbery, and one count of use of a firearm in the commission of a felony.

Crichlow appeals.

## ANALYSIS

"When a defendant challenges on appeal the sufficiency of the evidence to sustain his conviction, it is the duty of an appellate court to examine the evidence that tends to support the conviction and to permit the conviction to stand unless the conviction is plainly wrong or without evidentiary support." Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998). "If there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion." Id.

Crichlow initially argues that the evidence is insufficient to prove that he committed two counts of robbery. Rather, Crichlow contends that the May 19, 2007 incident constituted a single robbery as Ellis was the only person instructed to do anything in furtherance of the robbery because she was the only person in possession of the money. The Commonwealth, on the other hand, argues that the money was jointly possessed by both Cook and Ellis. As both Cook and Ellis were assaulted and intimidated, the incident effected two robberies. We agree with the Commonwealth.

"Robbery at common law is defined as the taking, with the intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." Johnson v. Commonwealth, 215 Va. 495, 496, 211 S.E.2d 71, 72 (1975).

- 4 -

"Threats of violence or bodily harm are not an indispensable ingredient of intimidation. It is only necessary that the victim actually be put in fear of bodily harm by the willful conduct or words of the accused." Harris v. Commonwealth, 3 Va. App. 519, 521, 351 S.E.2d 356, 357 (1986). Furthermore, "[t]he phrase '. . . of the personal property of another, from his person or in his presence . . .' has been broadly construed to include the taking of property from the custody of, or in the actual or constructive possession of, another." Johnson, 215 Va. at 496, 211 S.E.2d at 72 (quoting Durham v. Commonwealth, 214 Va. 166, 168, 198 S.E.2d 603, 605-06 (1973)). Thus, "[t]he offense of robbery requires a theft and force or intimidation directed against a custodian of personal property." Jordan v. Commonwealth, 2 Va. App. 590, 596, 347 S.E.2d 152, 155 (1986).

This Court has further recognized that "the appropriate 'unit of prosecution' is determined by the number of persons from whose possession property is taken separately by force or intimidation." Id. at 596, 347 S.E.2d at 156.

In Sullivan v. Commonwealth, 16 Va. App. 844, 433 S.E.2d 508 (1993) (en banc), the defendant pointed a gun at two store employees and threatened to kill them if they did not obey his instructions. He then told one employee to give him the store's money. The employee was new, and did not know where all the money was kept. As a result, the other employee "was obliged to direct [the first employee] in collecting the store's money." Id. at 845, 433 S.E.2d at 509. This Court determined that two robberies had occurred, because the employees "were custodians of the store's money and jointly possessed it" and "[the defendant] intimidated each employee and obtained the money through the agency of that intimidation." Id. at 848, 433 S.E.2d at 510-11.

The facts of the present case are similar to those in Sullivan. As hotel employees, both Cook and Ellis were custodians of the hotel's money, and, therefore, had joint constructive

possession of the money in the cash register. Although Cook did not actually turn over the money or assist Ellis in turning the money over to Crichlow, the evidence is clear that, by pointing his gun at her, Crichlow insured that Cook would make no effort to stop him from taking the property that was in her constructive possession. Thus, just like the defendant in Sullivan, Crichlow "intimidated each employee and obtained the money through the agency of that intimidation."[1] Id.

Crichlow next argues that his alibi evidence was such that "no reasonable trier of fact could have concluded that he was the person that robbed the motel that night." It is well established that the trial court, when acting as the fact finder, has the right to reject that part of the evidence it believes to be untrue and accept that part of the evidence it finds to be true. Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958). Furthermore, "'[t]he credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses.'" Commonwealth v. Jackson, 276 Va. 184, 197, 661 S.E.2d 810, 816 (2008) (quoting Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985)). The conclusions drawn by the fact finder on credibility issues may be disturbed on appeal only if the appellate court finds that the witness' testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief." Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984). "In all other cases, we must defer to the conclusions of 'the fact finder[,] who has the opportunity of seeing

---

[1] At oral argument, Crichlow conceded that a robbery would have occurred even if Ellis were not present to open the cash register. Thus, if Crichlow had approached the desk, pointed his gun at Cook, told her not to move, and then reached into the register and took the money himself, there would be no doubt that a robbery had occurred. As Cook's level of participation in both scenarios is the same, it would be absurd to hold that Crichlow's actions would constitute a robbery in the latter situation, but those same actions are not robbery in the former.

and hearing the witnesses.'" <u>Ashby v. Commonwealth</u>, 33 Va. App. 540, 548, 535 S.E.2d 182, 187 (2000) (quoting <u>Schneider</u>, 230 Va. at 382, 337 S.E.2d at 736-37).

In the present case, it is readily apparent that the trial court rejected Crichlow's alibi evidence in favor of the contradictory identification evidence and circumstantial evidence that demonstrated his guilt. Cook positively identified Crichlow as the person who committed the robberies. The stolen money and change envelope were found in Crichlow's possession shortly after the robbery. Additionally, a gun and bandana were found under the mattress on which Crichlow was sleeping and gloves were found in his pants pockets. This evidence is not "inherently incredible, or so contrary to human experience as to render it unworthy of belief." Accordingly, we must defer to the findings of the trial court.

CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

<u>Affirmed.</u>