COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff, Ortiz and Raphael
Argued by videoconference


CHARLES LAMONT KNIGHT

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0324-24-1                      JUDGE GLEN A. HUFF
                                                    DECEMBER 17, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Stephen C. Mahan, Judge

Kristin Paulding (7 Cities Law, on brief), for appellant.

Erin Dugan Whealton, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Charles Lamont Knight ("appellant"), an adjudicated sexually violent predator ("SVP"),

appeals the Circuit Court of the City of Virginia Beach's (the "circuit court") judgment revoking

his conditional release and recommitting him to the custody of the Department of Behavioral

Health and Developmental Services ("DBHDS") for inpatient treatment in a secured facility.

Appellant challenges the circuit court's finding that he violated the terms of his conditional

release plan.  Alternatively, he argues that the court should have permitted him to remain on

conditional release.  Finding no error, this Court affirms the circuit court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

In 2006, the circuit court convicted appellant of attempted rape. As his term of active incarceration ended, the Commonwealth petitioned the circuit court to commit him to DBHDS custody for "involuntary secure inpatient treatment" as an SVP. In 2019, the circuit court found by clear and convincing evidence that appellant was an SVP and that "alternatives to involuntary secure inpatient treatment" were "unsuitable." Accordingly, appellant was committed to DBHDS custody.

After a review hearing in 2021, the circuit court found that appellant remained an SVP but was "a suitable candidate for conditional release." The circuit court approved a conditional release plan that imposed numerous conditions regarding appellant's supervision, housing, sex offender status, substance abuse, and mental health treatment, employment, and social support networks. Among other requirements, the plan required appellant to "abide by the laws of the Commonwealth" and "all special and standard . . . conditions issued by his supervising officer." Appellant was also required to "submit to GPS monitoring," "be truthful, cooperative, of general good behavior," and "follow the instructions of his supervising officer."

In October 2021, appellant began his conditional release without incident; he obtained employment, attended all appointments and treatment sessions, and did not test positive for alcohol or drugs. In May 2022, he disclosed to his probation officer that he had met a woman named Tileda Brown shortly after his release, and in October 2022, he reported that his relationship with her was "serious." In March 2023, John Nisbet became appellant's probation officer and during their first meeting appellant informed Nisbet that "he intended to marry" Brown and wanted to move in with

---

[1] "Because the Commonwealth prevailed at the hearing, this Court must view the evidence in the light most favorable to the Commonwealth." *Lotz v. Commonwealth*, 277 Va. 345, 349 (2009). "We also accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." *Shivaee v. Commonwealth*, 270 Va. 112, 127 (2005) (citing *Stanley v. Webber*, 260 Va. 90, 95 (2000)).

her.  Nisbet met with the couple to discuss their relationship and appellant's offense history and risk factors.

On June 12, 2023, appellant's counsel petitioned the circuit court to modify the terms of his conditional release to permit him to live with Brown.  In late June 2023, Nisbet's office conducted a "home plan investigation" at Brown's address.  The investigation revealed that Brown's 20-year-old daughter was home from college on summer break.  Because of this, Nisbet and the Attorney General's Office proposed that any modifications to appellant's conditional release plan include a requirement that Brown, who worked in Washington D.C., "stay[] at the home overnight, not in D.C., whenever her daughter was home."  The Attorney General's Office sent Nisbet a draft order for review, not entry, that included that condition as part of the proposed modifications.

Appellant grew "frustrated" with delays in modifying his conditional release plan and a perceived "lack of communication . . . from his attorney."  Consequently, on August 9, 2023, he sent a *pro se* letter to the circuit court asking for "a new court appointed attorney" based on his counsel's allegedly inadequate representation.  On the same day, the circuit court replied that it would not consider the letter because it was "ex parte communication."  Shortly thereafter, appellant told Nisbet that he had filed a bar complaint against his attorney even though he knew the complaint would delay his petition to modify the conditions of his release.  Nisbet encouraged appellant to be patient and follow his attorney's legal advice.

Unpersuaded, on August 30, 2023, appellant filed a *pro se* "Petition to Modify Conditions of Release" and proposed order (the "*pro se* order").  Like the prior petition filed by his attorney, appellant's *pro se* order requested permission to live with Brown.  Unlike the prior petition, however, the *pro se* order also requested "the removal of the conditions" of his release.  The petition asserted that "[a]ll proper parties ha[d] been notified" of the petition, "wa[i]ve[d] any objection" under Code § 37.2-914(B), and "agree[d] to the *immediate entry*" of an attached order modifying

the conditions of his release. The attached order "granted the removal of the conditions" of appellant's release, allowed him to reside with Brown, and did not impose any conditions related to Brown's 20-year-old daughter. The order was signed by appellant and had blank spaces for the Assistant Attorney General, Assistant Commonwealth's Attorney, and Nisbet to sign as "Seen and Agree[d]." The trial court immediately signed and entered the proffered order on August 30, 2023.[2]

This petition surprised Nisbet, who was not aware that appellant "was requesting to have his conditions removed completely." Nisbet's prior conversations with appellant had focused "only" on changing his address; he had not agreed to remove all conditions, which would remove the SVP "label." Nisbet discussed the petition with appellant, who said "the home plan process" was taking too long and claimed his attorney was "not working for him."

The Attorney General's Office received a copy of appellant's *pro se* order on September 5, 2023. The Senior Assistant Attorney General assigned to appellant's case immediately informed the circuit court that she did not consent to the order's entry, but the court had already entered it. On September 6, 2023, the circuit court vacated the August 30, 2023 order, finding that the order had not been endorsed by all parties and erroneously stated that the parties had agreed to its immediate entry.[3] Nevertheless, on September 7, 2023, appellant called Nisbet and asked "when he could have his GPS bracelet removed" given the circuit court's order "removing the conditions." Nisbet was not aware of the above circumstances and replied that he "would first need" to see the order.

The Commonwealth petitioned the circuit court under Code § 37.2-913 for appellant to be taken into emergency custody and recommitted to DBHDS custody. This petition alleged that appellant had violated Conditional Release Supervision Condition 2 ("He will abide by the laws of

___

[2] This order was entered by Judge Steven Frucci during his service on the circuit court and before his elevation to this Court. Judge Frucci took no part in the consideration of this appeal.

[3] Appellant and Brown also married on September 6, 2023.

the Commonwealth of Virginia and all special and standard DOC conditions issued by his supervising officer."), Condition 3 ("He will be truthful, cooperative, of general good behavior, and follow the instructions of his supervising officer."), and Condition 6 ("I will follow the Probation and Parole Officer's instructions and will be truthful, cooperative, and report as instructed.").

At a hearing on the petition, Donna Baker, a deputy chief probation officer who initially supervised appellant's release, testified that she had "serious concerns" about his continuing on conditional release because he had not been "transparent" and did not communicate with his probation officers. In addition, Baker characterized appellant's relationship with Brown as "problematic" because Brown did not believe that appellant had committed the underlying offense or that he would "ever reoffend." Moreover, Brown believed that the probation office was "picking on him" and treating him "unfairly." Brown was "very disrespectful" to appellant, frequently berating and yelling at him. Baker did not believe that Brown would be "compliant with [any] conditions" or hold appellant accountable if he was again released. Baker emphasized that during appellant's 2021 review hearing, he had identified loneliness, rejection, low self-esteem, and unhealthy relationships as his risk factors. In Baker's view, appellant's relationship with Brown exacerbated those risk factors.

Dr. Stephen Ganderson, whom the circuit court qualified as an expert in the diagnosis, treatment, and risk assessment of sex offenders, interviewed and evaluated appellant in response to the Commonwealth's emergency custody petition and submitted a report to the circuit court. Dr. Ganderson reported that appellant had been diagnosed with paraphilic disorder, personality disorder (antisocial traits), alcohol use disorder, and adjustment disorder. Based on actuarial tests and dynamic risk factors, appellant had an above average risk of sexual recidivism. Dr. Ganderson emphasized that appellant tried to solve problems through deception and was not compliant with supervision. He also reported that appellant's work performance had declined, "correlated with his

- 5 -

involvement with . . . Brown." Dr. Ganderson concluded that "[s]ecure inpatient treatment [was] not needed to prevent [appellant's] condition from deteriorating *contingent upon* relinquishing his relationships with negative social influences and/or developing strong bonds with prosocial persons." Dr. Ganderson noted that appellant had an elevated risk to reoffend because he maintained relationships with negative social influences—namely his parents and Brown—who "undermine[d] [his] decision-making, self-regulation, impulsivity, and compliance with supervision." Further, Dr. Ganderson opined that appellant was "unlikely to comply with specified conditions if released *unless* he [could] develop prosocial, honest, and transparent relationships." At the hearing, Dr. Ganderson explained that if appellant's relationship with Brown continued, he would need secured inpatient treatment because of Brown's negative influence on him. Dr. Ganderson did not believe appellant would comply with release conditions, especially if he "move[d] in" with Brown. In sum, Dr. Ganderson concluded appellant had satisfied Code § 37.2-912(A)'s second and fourth elements, and could satisfy the first and third elements if he "distances himself from problematic relationships." Nevertheless, if the court allowed appellant to live with Brown, he recommended that the court require weekly marital counseling.

After considering the evidence and argument by counsel, the circuit court found that appellant had violated the conditions of his release and was no longer a suitable candidate for outpatient treatment. The circuit court ruled that appellant "knowingly and intelligently submitted a misleading, deceptive, or manipulative document . . . to the [c]ourt"; it explicitly rejected appellant's argument that he had submitted the petition through "unintentional misunderstanding." The circuit court further found that appellant was resistant to supervision, as demonstrated by his frustration with the legal process and attempts to remove GPS monitoring immediately after the August 30, 2023 order was erroneously entered. Next, the court found that Dr. Ganderson *conditionally* opined that appellant could be successful in outpatient treatment, but only if he relinquished his relationship

with Brown. Yet there was no evidence that he had done so. Accordingly, the court recommitted appellant to DBHDS's custody for inpatient treatment.

This appeal follows.

## ANALYSIS

On appeal, this Court considers whether there was evidence to support the circuit court's determination that appellant violated the terms of his conditional release and failed to satisfy all the statutory criteria to remain on conditional release. *See Lotz v. Commonwealth*, 277 Va. 345, 350 (2009) (applying a sufficiency of the evidence standard to a sexually violent predator appeal). "[W]e will not disturb the factual findings of the trial court unless plainly wrong or unsupported by the evidence." *Commonwealth v. Jackson*, 276 Va. 184, 192 (2008) (alteration in original) (quoting *Robinson v. Commonwealth*, 273 Va. 26, 39 (2007)).

A "[s]exually violent predator" is "any person who (i) has been convicted of a sexually violent offense . . . ; and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts." Code § 37.2-900. If a court finds, on the Commonwealth's petition, that the respondent is a sexually violent predator, the court must then determine whether the respondent must be involuntarily committed for inpatient treatment "until such time as the respondent's mental abnormality or personality disorder has so changed that [he] will not present an undue risk to public safety," Code § 37.2-909, or whether there is a "suitable less restrictive alternative to involuntary secure inpatient treatment," Code § 37.2-908(D). The court "shall place [him] on conditional release" when he

> (i) . . . does not need secure inpatient treatment but needs
> outpatient treatment or monitoring to prevent his condition from
> deteriorating to a degree that he would need secure inpatient
> treatment; (ii) appropriate outpatient supervision and treatment are
> reasonably available; (iii) there is significant reason to believe that
> the respondent, if conditionally released, would comply with the

conditions specified; and (iv) conditional release will not present an undue risk to public safety.

Code § 37.2-912(A). This code section also provides several factors for the court to consider when assessing the above elements.[4] "[C]onditional release is permitted only after a judicial determination that [the sexually violent predator] satisfies all four criteria." *Lotz*, 277 Va. at 350. Moreover, the court must order any respondent who is conditionally released "to be subject to electronic monitoring of his location by means of a GPS . . . tracking device . . . at all times while he is on conditional release." Code § 37.2-912(A). Indeed, any conditionally released respondent "who tampers with or *in any way* attempts to circumvent the operation of his GPS equipment is guilty of a Class 6 felony." Code § 37.2-912(C) (emphasis added).

"A judicial officer may issue an emergency custody order, upon the sworn petition of any responsible person . . . , based upon probable cause to believe that a respondent on conditional release . . . has violated the conditions of his release and is no longer a proper subject for

---

[4] These factors are:

> (a) the nature and circumstances of the sexually violent offense for which the respondent was charged or convicted, including the age and maturity of the victim; (b) the results of any actuarial test, including the likelihood of recidivism; (c) the results of any diagnostic tests previously administered to the respondent under this chapter; (d) the respondent's mental history, including treatments for mental illness or mental disorders, participation in and response to therapy or treatment, and any history of previous hospitalizations; (e) the respondent's present mental condition; (f) the respondent's response to treatment while in secure inpatient treatment or on conditional release, including his disciplinary record and any infractions; (g) the respondent's living arrangements and potential employment if he were to be placed on conditional release; (h) the availability of transportation and appropriate supervision to ensure participation by the respondent in necessary treatment; and (i) any other factors that the court deems relevant.

Code § 37.2-912(A).

conditional release." Code § 37.2-913(A). Such an emergency custody order directs "law-enforcement . . . to take the respondent into custody immediately," and he "shall be transported to a secure facility specified by [DBHDS] where a person . . . who is skilled in the diagnosis and risk assessment of sex offenders . . . shall, as soon as practicable, perform a mental health examination of the respondent, including a personal interview." Code § 37.2-913(B). The respondent must then "remain in custody until a [priority] hearing" is held before the circuit court "to determine if he should be returned to the custody of the Commissioner." Code § 37.2-913(C). At such a hearing, the circumstances surrounding the respondent's "failure to comply with the conditions of release . . . may be admitted into evidence." Code § 37.2-913(D). The mental health expert who conducted the interview may testify regarding "his diagnosis, his opinion as to whether the respondent remains suitable for conditional release, his recommendation as to treatment and supervision, and the basis for his opinions." *Id.* After the hearing, the court must determine (1) whether the respondent "violated the conditions of his release," and if so, (2) whether the violation "was sufficient to render him no longer suitable for conditional release." *Id.*

Here, appellant assigns two errors to the circuit court's judgment. First, that it erred when it found he violated the terms of his conditional release plan "because he did not violate his conditions when he submitted an order to the court and he was cooperative and truthful with his probation officer." Second, that the trial court erred when it found "that [his] violation of conditions was sufficient to revoke his conditional release because outpatient treatment was available, [he] would comply with conditions and he would not present an undue risk to public safety."

1. <u>The circuit court did not err in finding appellant violated the terms of his conditional release.</u>

Appellant first contends "the trial court erred in finding that [he] was in violation of his conditional release plan because he did not violate his conditions when he submitted an order to the court and was cooperative and truthful with his probation officer." He frames this assignment of error by arguing that his *pro se* order was not an attempt to defraud the circuit court but rather a mere clumsy attempt to expeditiously resolve his pending petition to amend his conditional release plan and that he was a model probationer.

Per his conditional release plan, appellant was required to be, among other things, "truthful, cooperative, [and] of general good behavior." This record supports the circuit court's conclusion that appellant's *pro se* order was an attempt to deceive his probation officer and manipulate the court and thus violate the terms of his conditional release. First, despite appellant's insistence that he merely copied the proposed orders his attorney had previously filed, the *pro se* order included language to remove his SVP status entirely; such amendment did not appear in any of the previous attorney-drafted proposed orders.[5] The addition of this language is a departure from appellant's stated goal—an amendment to allow him to live with Brown. Second, appellant claims filing the *pro se* order was an attempt to obtain a hearing on the pending motions to modify the conditional release plan. But no such hearing request was filed with the *pro se* order. Rather, appellant first sought a hearing only *after* it had been entered and vacated. Third, the *pro se* order was filed after appellant's probation officer encouraged him to be patient and allow the process to take its course; moreover, shortly after the *pro se* order was

---

[5] Appellant's attempt to categorize these discrepancies as merely clumsy drafting by a non-lawyer is unavailing because non-lawyers are held to the same standards as lawyers with regards to pleadings and procedural matters. *Townes v. Commonwealth*, 234 Va. 307, 319 (1987) ("the 'right of self-representation is not a license' to fail 'to comply with the relevant rules of procedural and substantive law'" (quoting *Faretta v. California*, 422 U.S. 806, 834-35 n.46 (1987))).

entered appellant contacted his probation officer to discuss having his GPS monitor removed—a request that surprised his probation officer, as they had never discussed removing all conditions. When taken together, the record supports the circuit court's conclusion that appellant acted to deceive his probation officer and manipulate the circuit court, and that doing so violated the terms of his conditional release plan. Accordingly, this Court affirms the trial court's finding that appellant violated the terms of his conditional release plan.

   2. <u>The trial court did not err when it found the violations of his conditional release were sufficient to revoke such release.</u>

Appellant next challenges the trial court's finding that his violation of the conditional release plan was sufficient to revoke his conditional release. Code § 37.2-913(D) provides that "[i]f upon hearing the evidence, the court finds that . . . the violation of conditions was sufficient to render [the SVP] no longer suitable for conditional release, the court shall revoke his conditional release and order him returned to . . . secure inpatient treatment." This Court "will not reverse the judgment of the trial court unless it is plainly wrong or without evidence to support it." *Commonwealth v. Squire*, 278 Va. 746, 749 (2009).

In revoking appellant's conditional release, the circuit court considered, inter alia, the testimony of his probation officer and Dr. Ganderson. From that evidence, the circuit court found appellant was resistant to supervision, his continued negative social relationships resulted in decreased work performance and exacerbated pre-existing mental conditions, and, finally, that he acted impulsively. Most importantly, the trial court found that appellant "has not and does not intend to relinquish his relationships with negative social influences." While the circuit court opined that the failure to relinquish negative relationships would, in and of itself, be sufficient to find appellant was no longer suitable for conditional release, it further explained that the evidence indicates appellant was unlikely to comply with specified conditions of release and that appellant presents an undue risk to the community because of the foregoing reasons. Because the circuit

court considered the elements and factors in Code § 37.2-913(A), and because there is evidence to support the trial court's conclusions as to those elements, this Court cannot say the circuit court's revocation of appellant's conditional release is without supporting evidence.

## CONCLUSION

This record supports the circuit court's findings that appellant violated the terms of his conditional release and that he was no longer suitable for conditional release. Accordingly, the circuit court's judgment is affirmed.

*Affirmed.*